Agatha BETHEA, a/k/a Cathy Bethea, Appellant,

v.

UNITED STATES, Appellee.

No. 11934.

District of Columbia Court of Appeals.

Argued Feb. 7, 1978.

Decided Nov. 16, 1978.

---

John Brooks Harrington, Washington, D. C., appointed by this court, for appellant.

Larry G. Whitney, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. and John A. Terry, Gordon C. Rhea, Genevieve Holm and Norman M. Monhait, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted of misdemeanor embezzlement (D.C.Code 1973, § 22–1202) and sentenced to one year's imprisonment. Execution of the sentence was suspended and appellant was placed on supervised probation for two years. On appeal, she claims that the 19-month delay between arrest and trial deprived her of her right to a speedy trial. We conclude on the basis of the record examined herein that she was denied a speedy trial, and reverse.

## THE FACTS

On June 21, 1975, appellant was arrested for embezzlement in Woodward & Lothrop's Department Store in downtown Washington, after two store detectives saw her putting sheets and pillow cases in her purse. A warrantless search of her downstairs employee locker resulted in seizure of a pistol.

On June 27, 1975, she was arraigned and charged with misdemeanor embezzlement under D.C.Code 1973, § 22–1202 and misdemeanor carrying a pistol without a license under D.C.Code 1973, § 22–3206.[1] Trial was set for September 2, 1975.

On September 2, 1975, appellant appeared in court with an attorney from the Law Offices of Washington and announced that she was ready for trial. The prosecution, however, announced not ready and was granted a continuance until November 4, 1975.

On November 4, 1975, both the prosecution and appellant were ready but the court was unable to reach the case for trial. Consequently, the proceedings were continued until a later date. This sequence of events recurred on January 27, 1976, and January 28, 1976. On the latter occasion, the case was continued until April 12, 1976.

On April 8, 1976, counsel for appellant appeared in Calendar Control Court, and requested that new counsel be appointed to represent appellant and that the case be continued until June 7, 1976, to allow new counsel time to prepare. The presiding

---

1. The carrying a pistol without a license charge was subsequently dismissed by the prosecution.

judge continued the case to the requested date, but failed to appoint new counsel.

On June 7, 1976, the government announced ready for trial but no attorney had been appointed to represent appellant. Consequently, the trial was continued until August 19, 1976, and new counsel was appointed.

On June 28, 1976, new counsel adopted a previously filed motion to suppress evidence and filed an application for a continuance to accommodate his vacation schedule. A hearing on the motion was scheduled for July 8, 1976, and the trial continued until August 27, 1976.

On July 8, 1976, the prosecutor appeared at the hearing on the motion to suppress, having filed no opposition thereto, and requested, over defense objection, a continuance of the hearing until August 11, 1976. At this point, appellant orally requested that the charges against her be dismissed for lack of a speedy trial. This motion was denied without prejudice.

On July 15, 1976, the government requested, and was granted over defense objection, an extension of time in which to file its opposition to the motion to suppress. On July 23, appellant filed a written motion to dismiss the charges on speedy trial grounds. The motion was set for hearing along with the previously filed motion to suppress.

On August 11, 1976, the prosecution still had not filed its opposition to the suppression motion. As a result, the motions judge treated the motion to suppress as conceded under Super.Ct.Cr.R. 47–I(c). The judge denied the speedy trial motion on the grounds that all of the previous delays "occurred because the Court was unable to reach the case for trial."

On August 27, 1976, both parties announced that they were ready for trial. The court, however, was again unable to reach the case and it was continued to September 10, 1976. On the 10th of September, the parties were again prepared for trial but no master jury list was available. Hence, the trial was continued until December 1, 1976.

On October 12, 1976, the prosecution submitted a motion to advance the trial date. At a hearing on November 5, 1976, the motion was granted and the trial date advanced to November 19, 1976. On that date, the court again failed to reach the case for trial and it was continued to January 27, 1977. No additional motions to advance were filed.

On January 27, 1977, 19 months and six days after her arrest, appellant was afforded her day in court. After a short trial, she was convicted of embezzlement.

## THE RELEVANT FACTORS

In determining whether an accused has been denied a speedy trial, a court applies a four-pronged balancing test which weighs: (1) the length of delay, (2) the reasons for delay, (3) the assertion of the right by the defense, and (4) the prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The remedy for the denial of the right to a speedy trial is dismissal of the indictment or information. *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). Whether that remedy is appropriate in a particular case depends on careful consideration of the above factors.

## LENGTH OF THE DELAY

In this jurisdiction, a delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial. *Branch v. United States*, D.C.App., 372 A.2d 998, 1000 (1977). After such a delay, the burden of justifying the delay or showing the lack of any significant prejudice to the accused is on the government. *United States v. Bolden*, D.C.App., 381 A.2d 624, 627 (1977). This burden increases in proportion to the length of the delay. *Branch v. United States, supra* at 1000; *United States v. Holt*, 145 U.S.App.D.C. 185, 186, 448 F.2d 1108, 1109, *cert. denied*, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). And, the delay that can be tolerated for a simple misdemeanor is considerably less

than in the case of a complex felony. *United States v. Perkins*, D.C.App., 374 A.2d 882, 884 (1977).

In this case, 19 months and six days passed between appellant's arrest and her trial for embezzlement of a package of sheets and two pillow cases. In light of the uncomplicated nature of the offense, the length of delay in this case weighs heavily in favor of dismissal.

## REASONS FOR DELAY

■ In evaluating the reasons for delay, a court should assign different weights to different reasons. *Barker v. Wingo, supra*, 407 U.S. at 531, 92 S.Ct. 2182. Accordingly, when the prosecution creates or prolongs a delay in bad faith, a speedy trial deprivation is easily shown. *United States v. Bolden, supra* at 628; *United States v. Lara*, 172 U.S.App.D.C. 60, 65, 520 F.2d 460, 465 (1975). Such a deprivation inheres as well in delays caused by government indifference. *See Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 295, 364 F.2d 684, 688 (1966). Institutional delays such as court congestion, however, are weighed less heavily against the government and may be easily outweighed by an inadequate assertion of the speedy trial right or a low threshold of prejudice. *United States v. Perkins, supra* at 883–84.

In this case, the delay must be attributed to a number of factors. For purposes of analysis, we have divided the total delay into five periods and will consider each separately.

The first period runs from June 21, 1975, to September 2, 1975. This period was spent arraigning appellant, appointing her first counsel and setting an initial trial date. Although chargeable to the government, this delay is an inherent part of the judicial process and therefore carries little weight.

The second period of delay, from September 2 to November 4, 1975, is directly chargeable to the prosecution and should be weighed heavily against it since the government requested and received a continuance.

■ From November 4, 1975 to April 8, 1976, the delay was caused by the congested misdemeanor calendar of the Superior Court. Unlike the delay which results from the process of arraignment, this delay is not an inherent part of the judicial process. *United States v. Perkins, supra* at 884. Although "weighed less heavily against the government in a speedy trial determination than a deliberate attempt to delay the trial or seek other tactical advantage," *United States v. Bolden, supra* at 628, such delay is a factor to be considered in the overall balancing process.

The period from April 8 to August 27, 1976, was consumed by the process of appointing new counsel and affording him an opportunity to prepare the case. The period from April 8 to June 7, should be attributed to appellant. If the court had promptly appointed new counsel on April 8, as requested, the period to June 7 would have been needed for him to familiarize himself with the case. The court's failure to act on April 8 necessitated the additional continuance from June 7 to August 19. That period must be attributed to the government.

■ The final period of delay, August 27, 1976 to January 27, 1977, was the product of court congestion. Unlike the earlier period attributable to court congestion, however, the last five months must be attributed to government indifference. By the time of the August 27 trial date, the case had been continued seven times, appellant had twice moved the court to dismiss the case on speedy trial grounds, and more than a year had passed since appellant's arrest. Because the speedy trial clause of the Sixth Amendment places the primary burden on the prosecution "to assure that cases are brought to trial," *Barker v. Wingo, supra*, 407 U.S. at 529, 92 S.Ct. at 219, the passing of a considerable length of time, especially after an accused has asserted his speedy trial right, should motivate the government to seek a prompt trial. *Hedgepeth v. United States, supra*, 124 U.S.App.D.C. at 295, 364 F.2d at 688. If the government fails to take the necessary steps to effect an immediate trial, then the delay must be accorded

substantial weight in the speedy trial calculus.

In the instant case, the government failed to do everything reasonably within its power to bring about a prompt trial. During the period from August 27, 1976 to January 27, 1977, three additional continuances were ordered. The only governmental response was a motion to advance the trial date, filed after the September 10 continuance. After the court granted the motion to advance, however, the government did nothing to assure that the case would be reached for trial on the scheduled date.

Under Super.Ct.Cr.R. 101(b), all misdemeanors scheduled for trial are called before the judge sitting in the Assignment Section. Subsections (5) and (6) of this rule provide a mechanism by which the government may expedite the trial of a case. Under subsection (5), the assignment judge can assure that a particular case is tried on the date scheduled for trial by certifying the case directly to a judge sitting in misdemeanor court. Alternately, the judge can forward the case to the Criminal Assignment Commissioner with instructions that it be given a priority, thus increasing the likelihood that the court will reach the case on the scheduled date.

Here, the government failed to request either that the case be certified to a judge trying misdemeanors or that it be assigned a priority.[2] On the advanced trial date, the trial court did not reach the case and another continuance was necessary. The government's failure to take appropriate steps to assure a prompt trial once appellant had asserted her speedy trial rights amounted to callous indifference.

In sum, virtually all of the delay in this case was either at the government's request, the product of government indifference, or the result of court congestion. The delay factor therefore weighs heavily in favor of dismissal.

2. In its brief, the government contends that the failure to obtain a special priority should be attributed to appellant. This assertion is contrary to the rule of *Barker v. Wingo, supra,* 407

## ASSERTION OF THE RIGHT

An early assertion of the right to a speedy trial is entitled to "strong evidentiary weight," *Barker v. Wingo, supra,* at 531, 92 S.Ct. 2182, whereas a delay in asserting the right makes it "difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. We note that the timely assertion of the right is an extremely important factor for "the more serious the deprivation, the more likely a defendant is to complain," *Id.* at 531, 92 S.Ct. at 2192.

In this case, appellant asserted her right orally on July 8, 1976, in a written motion on July 23, 1976, and immediately before trial on January 27, 1977. She did not express concern about a speedy trial, however, until more than one year after the filing of the information. Moreover, appellant did not make an alternative motion for an immediate trial at the time she sought dismissal on speedy trial grounds. *See United States v. Bolden, supra* at 628. We therefore find that although appellant asserted her right, she did so in a perfunctory manner, more than a year after her arrest. It is thus seen that the earlier delay was not in the context of a demand for prompt trial. *See Reed v. United States,* D.C.App., 383 A.2d 316, 319 (1978). Nonetheless, a more telling factor must be considered in the overall balancing of relevant considerations. Almost six months passed after prompt trial desire became manifest before trial began. *Compare Glass v. United States,* D.C.App., 395 A.2d 796 (Nos. 11167, 11352 and 12515, decided this date) where trial began within one month of demand. While this fact is not conclusive, of itself, it is of great significance.

## PREJUDICE TO THE DEFENDANT

*Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, identified three interests of the defendant protected by the right to a speedy trial:

U.S. at 529, 92 S.Ct. 2182, which places the burden on the prosecution to assure that cases are promptly tried.

(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

Although the accused is not required to affirmatively establish prejudice in a case where there has been excessive delay, *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), it remains an extremely important factor in the overall balancing process. *Barker v. Wingo, supra.*

Here, appellant did not testify or present any evidence at trial, nor has there been a showing that she would have put on a defense if the case had gone to trial earlier. We also note she was not incarcerated at any time during the pendency of this proceeding. We thus do not find prejudice to appellant of types (i) and (iii) under *Barker v. Wingo, supra.*

▉ Because of its intangible quality, type (ii) prejudice, "anxiety and concern of the accused," is sometimes difficult for a court to assess. For some individuals, delay in coming to trial may be nearly traumatic whereas for others, additional delay will bring relief. The court nevertheless has to make an assessment; and here, given the prima facie merit to appellant's claim based on a delay of more than one year, *Branch v. United States, supra,* the burden is on the government to prove that anxiety was minimal. In fact, the government's showing must "convincingly outweigh" appellant's assertion that anxiety increased with the delay. *See Day v. United States,* D.C.App., 390 A.2d 957 at 970 (1978).

The government has not made such a showing. The record reveals that appellant asserted her right to a speedy trial on several occasions—a fact consistent with appellant's claim of anxiety, not with the government's assertion to the contrary. The record also shows that appellant has had no prior convictions. There is no evidence that she has had acquittals or other experiences with the criminal justice system which might tend to have made her insensitive to the delay. Absent such evidence (or any other probative evidence), we have no basis

for doubting that the pattern of continuances of a petty theft charge against defendant without a criminal record was anxiety-producing as she alleged—and as implied by the prima facie validity of the speedy-trial claim after a delay of more than one year.

Recently, we agreed with the Supreme Court's observation in *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978) that a post-trial finding by the trial judge often will provide the most useful perspective and basis for determining whether delay has been prejudicial, and that some cases accordingly "may present circumstances in which a remand would be the prudent course, given the factual determination in the speedy trial analysis." *Day v. United States, supra,* at 971–972. The present case, however, is not one where a remand would be fruitful—nor has either party suggested it. A remand may be helpful when the question of prejudice concerns whether delay has impaired preparation of the defense. The trial judge has a unique vantage point from which to evaluate that claim once the trial has been concluded. When it comes to allegations of anxiety, however, we do not perceive from this record any basis for inviting the trial judge to make a finding. There is simply no evidence from which anyone reasonably can conclude that the government's assertion of no prejudicial anxiety convincingly outweighs appellant's claim to the contrary.

CONCLUSION

▉ When the above factors are balanced, we find that the government has failed to refute appellant's prima facie claim of a denial of her right to a speedy trial. This is the classic case of a single misdemeanor which should have been tried with dispatch. The delay of 19 months was excessive and inexcusable. Moreover, the length of the delay is exacerbated by the fact that over six months passed between appellant's first assertion of her right and the trial. The delay was not justified by countervailing factors such as the complexi-

ty of the case, the need for a mental examination or difficulty in locating witnesses. Nor was the bulk of the delay attributable to "admittedly neutral factors," *United States v. Bolden, supra* at 629, for here a substantial amount of delay was due to the government's failure to assure a prompt trial.

Although appellant could have asserted her right in a more meaningful fashion, the length of delay, the nature of the offense, the government's abdication of its duty to promptly bring the case to trial, and the anxiety caused by the delay compel reversal.[3] The government filed a motion to advance the December 1 trial date, but it did so only after waiting a month after September 10 when the trial date was set. This was 15 months after appellant's arrest and there is little else to suggest that the government was seriously pushing for a more prompt trial.

The judgment is reversed and the charges against appellant are

*Dismissed.*

NEBEKER, Associate Judge, concurring in result:

While I concur in the result, I arrive at that conclusion on the basis of the record before us (D.C.Code 1973, § 11–721(e)) and not, as do my brethren, through a first impression appellate finding that appellant was prejudiced by inordinate governmental delay. From the record itself it is clear that appellant was charged, in June 1975, with misdemeanor embezzlement of some bed linens; that her trial date was continued nine times, eight of which were attributable to prosecutorial or court neglect or court congestion; that three of these continuances (none attributable to appellant) occurred after she had made known, by

motion to dismiss, her desire for a speedy trial; and that the total time between arrest and trial was nineteen months, six of which occurred after her motion to dismiss. Upon this record, combined with the failure of the government to justify the delays, I conclude that the government failed to discharge its "constitutional duty to make a diligent, good faith effort to bring [appellant to trial]." *Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). With the majority's suggestion that the case should turn, in part, upon appellant's "anxiety and concern" pending trial, however, I am constrained to disagree.

Prejudice to an appellant is an extremely important factor in the overall balancing process mandated by *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). While prejudice is neither "a necessary [nor] sufficient condition to the finding of a deprivation of the right of speedy trial," 407 U.S. at 533, 92 S.Ct. at 2193, its assessment must nevertheless be as accurate as our judicial system permits. To achieve fairness and justice to both litigants, our judicial system permits an appellate court to review only the record before it.

The majority concedes that the record is devoid of indications of trial prejudice and prejudice which might have arisen from pretrial incarceration. The majority opinion, however, proceeds on a predicate that on appeal the government has a burden of showing a negative—lack of anxiety. It seems to say that an assertion of the right one year after arrest is consistent with an appellate level claim of anxiety during that previous year. That assumption need not follow, for anxiety about pending charges may not be present at all or merely arise only when the speedy trial claim is asserted. Anxiety may indeed have been indulged in

---

**3.** The instant case is distinguishable from *Day v. United States, supra,* in which we rejected appellant's claim that a 32½ month period between arrest and trial violated his Sixth Amendment right to a speedy trial. There, we characterized 24 months as significant delay chargeable to the government, but determined that this was offset by appellant's failure to meaningfully manifest any desire that his case

be brought to trial, and by an absence of cognizable prejudice to appellant resulting from the delay. In the instant case, we are unable to find factors requisite to offset the excessive delay, particularly in light of the relative ease with which this simple case could have been handled, and because the government failed to take appropriate steps to expedite trial once appellant had asserted her right.

the hope that delay may, as it often does, weaken the government's case. In any event, it seems highly unrealistic to me that the government—or any party—on appeal can establish a negative without access to matter not of record, particularly where the matter is subjective to another. Here the government is called upon to demonstrate a lack of anxiety—a subjective state of mind and emotion. I fail to see how it can do so where the matter was not broached in the trial court. My point is best illustrated by the majority reference to the lack of evidence respecting appellant's experience with the criminal justice system. There is no evidence, of course, since appellant's inexperience was not raised in the motion to dismiss. Anxiety was not "alleged" below, *ante* p. 792—she alleges it only on appeal. Equally beyond the record is appellant's latter-day assertion of anxiety in which this court evidently proposes to indulge as a basis for "type (ii) prejudice." In these matters, I believe, it is not for us to "have [a] basis for doubting," *ante* p. 792. That is a trial court function.

The majority conclusion that appellant suffered anxiety and concern is flawed in other respects. Her attorney, familiar with the Superior Court, may well have advised her on each occasion not to expect that the court would reach her case. Moreover, an expectation that the charges would promptly be resolved well may have caused her even greater anxiety and concern than the postponement of that resolution; she may have breathed a sigh of relief each time the court failed to reach her case. Again, we just do not know her state of mind. As to this appellant, the record offers no reason to assume that her seven appearances caused her greater anxiety and concern than what she otherwise would have experienced.

I do not suggest that an appellant's anxiety and concern pending the resolution of criminal charges cannot appropriately be considered by an appellate court. *Barker v. Wingo, supra,* and *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973), mandate otherwise. But a court's consideration of these factors in an individual case

must stem from the record before it and not from assumptions converted into appellate findings of fact. Findings that an individual appellant has suffered such prejudice are peculiarly within the province of the trial court. Such subtle non-trial prejudice is, of course, elusive of accurate measurement. But to the extent that it may be assessed, only the trial judge is in a position to assess it after seeing and hearing the appellant and receiving evidence from the parties. Only after the trial judge has ruled on the matter can an appellate bench properly review the factual predicates for asserted prejudice. *See United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 1551–52, 56 L.Ed.2d 18 (1978); *Day v. United States,* D.C.App., 390 A.2d 957 (decided July 10, 1978).

In the posture of the instant case (and many like it), of course, the limited Superior Court view of the facts occurred long before the case was ripe for appellate review—in this case, more than five months before trial. Any assessment of prejudice at that point necessarily would be complete. Yet the incompleteness need not lead us to an usurpation of the trial court function. In my view it would be a better practice for a timely speedy trial claim which is not granted before trial to be reserved for resolution in the event of conviction. The claim of prejudice as well as any other facts requiring resolution could then be determined. I read the Supreme Court's characterization of the nature of the speedy trial right in *United States v. MacDonald, supra,* as inviting such post-verdict proceedings. Moreover, should this court find the record insufficient for decision, it can remand the record for such further proceedings as might be necessary. D.C.Code 1973, § 17–306. The absence of a sufficient record, however, does not confer upon this court the ability (much less jurisdiction) to engage in fact finding.

An atypical case may be dismissed without the appellant having demonstrated prejudice. *Moore v. Arizona, supra.* To be sure, many speedy trial claims are raised with no prejudice present at all. One must

expect that an accused, recognizing that the court system is overburdened, will attempt to use a speedy trial claim when delay has caused him no harm and indeed may have helped. The courts, being aware of the possibility, are thus most reluctant to rule in favor of such claims. It is the extraordinary case which is dismissable on speedy trial grounds. It is for that reason that the accused has a burden, by asserting the right, of identifying his case as one where delay and prejudice coalesce so as to require special attention. A relatively prompt assertion of the right (here one year from the presentment of the charge [1]) coupled with the other unique factors revealed in the record make this case sufficiently atypical—though it is a close one—for dismissal on speedy trial grounds.

---

[1]. This court seems to have wedded itself to what I deem to be an unfortunate, if not inexpressive mechanical rule, that a one year lapse gives "prima facie" merit to a speedy trial claim. *See Strickland v. United States*, D.C. App., 389 A.2d 1325 (1978) (Harris, J., separate statement). Whatever prima facie merit means, it would seem to imply that absent an extraordinary showing of need for greater dispatch an earlier assertion of the right would have no or little merit. Thus I deem appellant's one-year motion to dismiss as relatively prompt, particularly in view of the nearly six-month delay thereafter before trial began.