Carl B. REID, Appellant,

v.

UNITED STATES, Appellee.

No. 13800.

District of Columbia Court of Appeals.

Argued May 3, 1979.

Decided June 7, 1979.

---

* In light of our decision to remand, we do not address appellant's other requests.

Leroy Nesbitt, Washington, D. C., appointed by the court, for appellant.

Mark J. Biros, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Richard H. Saltsman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge.

Due to an alleged violation of his right to a speedy trial, appellant requests dismissal of an indictment charging him with armed robbery. Alternatively, appellant seeks reversal of his conviction and remand for a new trial on the ground that oral and written statements which he made were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

The facts indicate that Marian Hester was working at Little Soul's grocery store on the night of June 26, 1976. At approximately 10:30 p. m., two men entered the store. They walked to the beer case and then approached the counter behind which Hester was positioned. After asking Hester the price of beer, appellant's cohort, Alton Best, pointed a gun at her and directed her to open the cash register. After she had attempted unsuccessfully to open the register, Best hit the register with the gun, which opened the cash drawer. Best grabbed the bills and appellant took the change from the drawer. The two individuals then left the store.

William Bates saw appellant and Best park their car in an alley which was by his house and around the corner from the Little Soul's store on the night of June 26, 1976. Bates testified that appellant and Best exited the car with a brown paper bag and walked around the corner. Approximately five minutes later, Bates saw the pair run to the car, enter it and flee. Finding this action suspicious, Bates noted the license tag number of the car and reported it to the Metropolitan Police Department (MPD).

Officer McClure of the MPD received the license tag number and traced it to a car owned by appellant's father. The next day, Officers McClure and Ludwig visited the residence of appellant's father. On this visit, the officers interviewed appellant's brother who stated that appellant had used the car the previous night. Since appellant was not at home at that time, the officers decided to leave and return later. Shortly after the officers returned to the house, appellant arrived. The officers informed

appellant of the robbery which had occurred the previous night and asked appellant if he knew anything about the crime. Upon receiving an affirmative response, Officer Ludwig advised appellant of his rights and let him read the card upon which the rights were printed. He then inquired if appellant understood his rights and asked if he desired to waive these rights. Appellant signed the card, thereby manifesting his waiver of his rights. Appellant then gave an oral statement to the officers acknowledging his participation in the crime which basically accorded with the accounts given by Bates and Hester.

After giving this oral statement, appellant was taken to the robbery squad office where he was interviewed by Detective Kuty. Detective Kuty confirmed that appellant had previously been advised of his rights and then asked him if he would sign a written statement. Appellant assented and signed a written statement after Detective Kuty advised him of his rights once again.

Following his arrest on June 27, 1976, appellant was released on bond. A jury trial commenced on April 20, 1978, at which appellant was found guilty of armed robbery. The court held a post-conviction hearing on appellant's pretrial motion to dismiss the indictment for lack of a speedy trial. The motion had been filed 18 months after the arrest. The motion was denied after the trial judge had heard and considered the evidence. Appellant's sentence was suspended and he was placed on probation for a three-year period.

■ The first question before us is whether the delay of twenty-one months between arrest and trial violated appellant's right to a speedy trial. Since the trial court has held a post-verdict hearing on the speedy trial issue, we are provided with "the most useful perspective and basis for determining" the proper response to that question. *Bethea v. United States,* D.C. App., 395 A.2d 787 (1978). Our resolution of this issue is, therefore, truly a review of the trial court's decision. It is that court which must, when assessing a speedy trial

claim after the verdict, "engage in [the] difficult and sensitive balancing process" required by *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). Our role is to determine whether the trial court erred in that process. Accordingly, our review is limited to assessing evidentiary support for the facts that have been determined respecting, for example, reasons for delay, good faith in assertion of the right, and presence or absence of prejudice from delay. *See* D.C.Code 1973, § 17–305(a). A higher degree of accuracy in our review is made possible because the trial judge provides us with a Memorandum and Order on this issue, which we set forth below:

This matter is before the Court on defendant Carl B. Reid's motion to dismiss the indictment for lack of speedy trial. The Court's decision on this matter was held in abeyance pending the outcome of defendant's jury trial and receipt of the official transcripts of several proceedings in this case. On April 20, 1978, defendant was convicted of armed robbery. On June 5, 1978, the Court received the transcripts in question.

Upon consideration of the motion, the opposition thereto, and the record in this case, the Court concludes that the defendant's constitutional right to a speedy trial has not been violated. Accordingly, defendant's motion to dismiss is denied.

The Supreme Court has mandated that four factors be balanced in determining whether a defendant in a criminal case has been denied his right to a speedy trial: (1) length of delay; (2) reason for delay; (3) time of assertion of the right; (4) and prejudice through delay to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530–32 [92 S.Ct. 2182, 33 L.Ed.2d 101] (1972).

A delay of one year or more between arrest and trial gives prima facie merit to a claim that a deprivation of an accused's speedy trial rights has occurred. *Branch v. United States,* [D.C.App., 372 A.2d 998, 1000 (1977)]. Where such a delay is found to exist, the Court must examine it

in light of the other three factors enumerated in *Barker,* 407 U.S. at 533 [92 S.Ct. 2182]; *Bowman v. United States,* [D.C.App., 385 A.2d 28 (1978)]. In the instant case, defendant was arrested on or about June 27, 1976. His trial began on April 14, 1978. Since over twenty one months elapsed between arrest and trial, the Court must view the delay as presumptively prejudicial, and must inquire into the other factors that go into the balance.

In determining how much significance to give to the lapse of time, we must examine the reasons for the delay. *Barker,* 407 U.S. at 531 [92 S.Ct. 2182]; *United States v. Bolden,* [D.C.App., 381 A.2d 624, 628 (1977)]. Because the parties are in dispute in some respects as to the chronology of the case, and the entries on the court jacket are incomplete, we shall set forth the history of the case in some detail.

On the original trial date, December 2, 1976, the court was in trial on another matter, and continued this case to March 15, 1977. On March 1, 1977, when counsel were before the court on another case, it was determined that scheduling difficulties would make it impossible for this case to go forward as scheduled, and it was agreed that March 15 would be reset as a status hearing. On March 15, 1977, the case was continued until June 8, 1977. On June 8, 1977, the court was again in trial. Defense counsel asked the court whether another judge was available to hear the case. The government interjected that the prosecutor assigned to the case was engaged in trial. Defense counsel responded that since the defendant was free on bond, "a continuance date does not constitute any big problem." The trial was then rescheduled for August 17, 1977. On August 9, 1977, defense counsel informed the court that he had just received notice that Chief Judge Greene had specially set a two week trial to begin August 15, 1977, which would obviously conflict with the August 17 trial date in this case. On August 15, defense counsel formally moved for a con-

tinuance, and November 29, 1977, was set as the next trial date. The court jacket indicates that on October 13, 1977, the case was called for trial, but that the court was in trial on another matter, and that the case was rescheduled for December 14, 1977. The government has represented, however, that on October 13, on which date this case was not scheduled, it informed the court that police officer witnesses would be unavailable on November 29, and therefore requested that the case be rescheduled for December 14, 1977. On December 14, 1977, and the next trial date, February 8, 1978, the court was engaged in other matters. The case was continued to April 14, 1978, the date it finally proceeded to trial.

The passage of over twenty one months between arrest and trial in this case is certainly undesirable. The bulk of the delay, however, approximately seventeen months, is attributable to court congestion, a problem which has been explicitly noted by the Court of Appeals. *Bowman* [*v. United States, supra* at 30 n.3]. Such institutional delays are basically neutral and are not to be weighed as heavily against the government as would a deliberate attempt to hinder the defense. *Smith v. United States,* [D.C.App., 379 A.2d] 1166, 1167 (1977). The government requested only one continuance, from November 29, 1977, to December 14, 1977, a lapse of two weeks. The defense also received one continuance, due to a scheduling conflict, which resulted in a three and a half month delay.

While the defendant did assert his right to a speedy trial in this case, the fact that he did not assert his rights more forcefully dilutes the force of this factor in his favor. *See Bowman* [*v. United States, supra* at 31]; *Jefferson* [*v. United States,* D.C.App., 382 A.2d 1030, 1032 (1978)]. Although on March 1, 1977, defense counsel made passing reference to a motion for speedy trial, and on June 8, 1977, he asked whether the case could be certified to an available judge, on both occasions he noted that the defendant

was on bond and did not object to a continuance. There is no indication that defendant objected to any other continuances in this case. The August 17, 1977 trial date was continued at the request of the defense. Defendant did not file a formal speedy trial motion until December 16, 1977, approximately eighteen months after his arrest.

In evaluating the prejudice to defendants caused by delay between arrest and trial, the Supreme Court has emphasized three primary considerations: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532 [92 S.Ct. 2182]. The Court is unable to find any such prejudice to the defendant in this case.

Defendant was on bond from the day of his presentment to the day of trial. Although some degree of prejudice may be presumed from the existence of unresolved criminal charges with the attendant anxiety and concern, this inference is weakened by defendant's failure to assert his right to a timely trial more forcefully. *See Jefferson* [*v. United States, supra* at 1032]. Finally, the Court finds that the defense in this case was not impaired as a result of the delay.

In view of the foregoing, it is, this 7th day of June, 1978,

ORDERED, that defendant Carl B. Reid's motion to dismiss the indictment for lack of speedy trial be, and hereby is, denied.

/s/ John R. Hess

JOHN R. HESS, Judge

. We find support in the record for the findings with respect to the reasons for the delay, the evidentiary weight * to be given to appellant's assertion of the right and the lack of prejudice to appellant resulting from the delay. That being the case, and the trial court having made a legally correct analysis of the speedy trial claim, we must reject the contention.

 Next, appellant charges that the trial court erred in denying his motion to suppress oral and written statements allegedly obtained in violation of *Miranda v. Arizona, supra.* The thrust of appellant's argument on appeal is that because he was taken into custody, accused of the crime, and asked if he knew anything about it before being advised of his rights, his *Miranda* rights were violated and the statements should have been deemed inadmissible. Our review of the record persuades us to sustain the trial court's denial of appellant's motion to suppress. *Miranda* prohibits the introduction into evidence of statements obtained through custodial interrogation unless the declarant has been properly advised of his rights and has waived them. Appellant was not in custody when he stated that he knew something about the crime. In willingly assenting to the officer's request that the investigation be held in his living room, appellant was not, thereby, involuntarily being taken into custody for interrogation. Appellant was properly informed of his rights. At the moment appellant responded affirmatively to the officer's inquiry as to whether appellant knew anything about the crime, appellant received a reading and explanation of his *Miranda* rights. Before that time, it was unnecessary to advise appellant of his rights. *See Montgomery v. United States,* D.C.App., 268 A.2d 271 (1970); *White v. United States,* D.C.App., 222 A.2d 843 (1966). It follows that the trial court could find that appellant "made a knowing and intelligent waiver of those rights while in his own home [and] . . . at the robbery squad." Consequently, we affirm the trial court's determination. *See* D.C.Code 1973, § 17–305(a).

*Affirmed.*

---

* *Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. 2182.