UNITED STATES, Appellant,

v.

Herman William ELLIS, Appellee.

No. 79–245.

District of Columbia Court of Appeals.

Argued July 25, 1979.

Decided Nov. 20, 1979.

972

E. Anne McKinsey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., at the time the brief was filed, John A. Terry, Peter C. DePaolis and Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Harry Toussaint Alexander, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KERN and FERREN, Associate Judges.

KERN, Associate Judge:

This is an appeal from an order by the trial court dismissing the charge of assault, D.C.Code 1973, § 22–504, against appellee on the ground that his constitutional right to a speedy trial had been violated. The record reflects that almost two years, viz., 22 months, elapsed between arrest and the trial date when the court entered its dismissal order, and hence this delay alone gives prima facie merit to appellee's claim. *Branch v. United States*, D.C.App., 372 A.2d 998 (1977).

The government argues (Brief at 6), that "the court did not thoroughly and properly perform the sensitive balancing test required by the prevailing law in this jurisdiction in determining that appellee was deprived of his constitutional right to a speedy trial." However, the record reflects that the trial court did recognize and apply the familiar test enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1973). It first noted (Record at 9), "we have a total length of delay . . of 22 months"; it then identified and stated in open court, without contradiction from either counsel (Record at 7), the reasons for the delay: "the court congestion is 13 months . . . Mutual continuances, two months . . . Defense continuances, four months . . . Government continuances, three months."

The court noted that the case was a single misdemeanor charge, *see Bethea v. United States*, D.C.App., 395 A.2d 787 (1978), and pointed out to the prosecutor at the hearing of the speedy trial motion (Record at 24), that "you are here confronted with a delay on a misdemeanor case which adds to your burden because it's not a complex case. There's no need for a long delay to prepare for it . . . ." The court further commented to the prosecutor (Record at 27–28), "[y]ou could have set it down for a preference . . . we have set up special trial dates because the case has some age on it and at the request of the Government . . . we set those and I take the case and I hold that case. I don't send it back to the pot and that could have been done in the case very easily . . . ."

Appellee's counsel, in response to the court's inquiry as to prejudice his client had suffered (Record at 28), pointed generally (Record at 30), to the delay causing faded memories and asserted he had at least three eyewitnesses to the alleged assault. (Record at 31.) He further asserted appellee "has suffered a great deal of anxiety every time he comes to court" (Record at 31), and noted that the assault charge had been originally advanced by a police officer stationed near appellee's place of business so that the

latter's "anxiety is more than usual because he's got a feeling they have a vendetta against him."

Appellee's counsel advised the court (Record at 35), that ultimately appellee "got out of 4D (the police district) and went to another district to operate the same kind of [gasoline] station." The court accepted this statement (Record at 41), as evidence of prejudice suffered. The court concluded (Record at 40–41), in pertinent part:

> The speedy trial clause of the Sixth Amendment places the primary burden on the prosecution to assure that cases are brought to trial, especially after the accused has asserted a speedy trial right, which they have asserted here, should motivate the Government to seek a prompt trial and really, the history of the case should have put you on notice that you were going to be in trouble, in my opinion. You have got a bad record in this case. . . . This is the case of a single misdemeanor which should have been tried with dispatch.

The government (Brief at 14), points to the failure of appellee to demand in writing a speedy trial until several months before trial as distinguishing the instant case from *Bethea v. United States, supra.* The record reflects that about half-way through the 22-month period between the arrest and the trial, appellee filed a motion to dismiss for want of prosecution. At that time he expressly urged, among other grounds for granting the motion, that he had been denied a speedy trial. The fact that the trial court then granted the motion to dismiss *without prejudice* and that the government reinstituted the prosecution should not obscure appellee's demand, early on, for a speedy trial.

The government also contends (Brief at 16), that "appellee failed to demonstrate the kind of anxiety which concerned the court in *Bethea* " and there was "no credible assertion that appellee's defense was impaired by the delay—other than vague allusions to 'fading memories'." In *Bethea* this court noted that the impairment of the defense case caused by the lengthy delay of a criminal prosecution was better determined post-trial, but that the anxiety generated by such an undue delay was determinable *before trial* by the court assessing prejudice. We then pointed out in *Bethea* that (1) when more than one year elapsed between arrest and trial *and* (2) the defendant asserts he has suffered prejudice by reason of the anxiety produced by this delay, the government then in order to disprove prejudice has the burden to show "convincingly" to the trial court that the anxiety was minimal. Here, applying the test set forth in *Bethea,* the trial court had a 22-month delay and an assertion, which it accepted, that this delay generated such anxiety on appellee's part as to cause him to move his business out of the area. Given the length of the delay and this assertion of prejudice relied upon by the trial court, we conclude "[t]here is simply no evidence from which anyone reasonably can conclude that the government's assertion of no prejudicial anxiety convincingly outweighs appellant's claim to the contrary." *Bethea v. United States, supra* at 793.

Since we are unable to agree with the prosecution's contention that the trial court erred in the "delicate and sensitive balancing process of applying *Barker v. Wingo*," we must uphold its order of dismissal.

*Affirmed.*

FERREN, Associate Judge, dissenting:

I dissent because I believe the majority has made an unwarranted extension of *Bethea v. United States,* D.C.App., 395 A.2d 787 (1978), and, as a consequence, has misapplied the speedy trial criteria announced in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

### I.

This case and *Bethea,* involving misdemeanors, are roughly equal in length of delay (22 months and 19 months, respectively). In *Bethea,* however, all but two months of the delay were attributable to the government whereas in this case, accepting the trial court's findings, I count six

months of continuances attributable to the defendant-appellee.[1]

Here, moreover, the defense-requested continuances take on added significance when evaluated in connection with the third *Barker* criterion, assertion of the right to a speedy trial. Although the defense filed a motion to dismiss for want of prosecution 11 months after arrest—and obtained a dismissal without prejudice on March 29, 1978 —the defense was responsible for four of the ten months between April 19, 1978 (when the charges were refiled) and February 12, 1979 (the date of dismissal). *See* note 1 *supra.* The defense, in fact, did not file a motion to dismiss for want of speedy trial until December 7, 1978—nine days *after* it had sought a continuance resulting in a two-month delay. *See* note 1 *supra.* Moreover, on January 5, 1979, the date set for hearing on the speedy trial motion, defense counsel did not appear, and the motion, accordingly, was dismissed without prejudice. On this record, therefore, I find virtual abandonment of any assertion of the right to a speedy trial, in marked contrast with *Bethea,* where "[a]lmost six months passed after prompt trial desire became manifest before trial began." *Id.* at 792.

As to the final *Barker* criterion, prejudice, this case and *Bethea* are comparable in that the only prejudice at issue is anxiety and concern over the delay.[2] On the other hand, their similarity is superficial and thus should be analyzed with care.

In *Bethea* the defendant, an apparent first-offender, had been charged with a petty offense (shoplifting) and, beginning 12½ months after arrest, had several times asserted her right to a speedy trial. She was not incarcerated pending trial, nor did she claim prejudice to defense preparation from the delay. Thus, we were confronted with the question of how to evaluate a claim of prejudice based solely on anxiety, when more than a year had passed without trial since the date of arrest. We said:

> Because of its intangible quality, . . . "anxiety and concern of the accused" is sometimes difficult for a court to assess. For some individuals, delay in coming to trial may be nearly traumatic whereas for others, additional delay will bring relief. The court nevertheless has to make an assessment; and here, given the prima facie merit to appellant's claim based on a delay of more than one year, *Branch v. United States,* [372 A.2d 998] *supra,* the burden is on the government to prove that anxiety was minimal. In fact, the government's showing must "convincingly outweigh" appellant's assertion that anxiety increased with the delay. *See Day v. United States,* D.C.App., 390 A.2d 957 at 970 (1978). [*Bethea, supra* at 793.]

We then addressed the facts:

> The government has not made such a showing. The record reveals that appellant asserted her right to a speedy trial on several occasions—a fact consistent with appellant's claim of anxiety, not with the government's assertion to the contrary. The record also shows that appellant has had no prior convictions. There is no evidence that she has had acquittals or other experiences with the criminal justice system which might tend to have made her insensitive to the delay. Absent such evidence (or any other pro-

---

1. Specifically, continuances totaling four months (September 23-November 25, 1977; August 7-October 11, 1978) are attributable solely to defense requests. In addition, a continuance of two months, although mutually acceptable, must be attributed to the defense, for after the case had been certified to the assignment commissioner on November 28, 1978, it was returned to calendar control at the request of defense counsel and set for trial on February 6, 1979. (The case actually was certified to Judge Daly for trial on February 12, at which time he granted the motion to dismiss.)

2. In the present case, as the majority notes, counsel for defendant-appellee also "pointed generally . . . to the delay causing faded memories and asserted he had at least three eyewitnesses to the alleged assault." *Ante* at 972. Counsel, however, did not proffer any evidence that his own witnesses' memories suffered from the delay, and the trial court made no finding with respect to that possibility. In any event, we have indicated that general allegations of faded memories, without more, do not establish prejudice. *See Day v. United States,* D.C.App., 390 A.2d 957, 972–73 (1978).

bative evidence), we have no basis for doubting that the pattern of continuances of a petty theft charge against defendant without a criminal record was anxiety-producing as she alleged—and as implied by the prima facie validity of the speedy-trial claim after a delay of more than one year. [*Bethea, supra* at 793.]

Accordingly, in *Bethea* we dealt with the central question presented here: whether the government's showing "convincingly outweighed" the presumption of prejudice derived from more than a year's delay as such, buttressed solely by the defendant's assertions of prejudicial anxiety.[3]

There are three aspects of *Bethea* which have a significant bearing on evaluation of the anxiety factor in the present case. First, because delay for some persons "may be nearly traumatic whereas for others, additional delay will bring relief," *id., Bethea* suggests a way to determine how delay "cuts" in a given case. If, as *Bethea* says, persistent assertion of the right to a speedy trial manifests anxiety, I believe it follows that a failure to assert the right (or action that can be construed as virtual abandonment of that right) manifests the opposite—a belief that delay works in the defendant's favor. Second, *Bethea* pointed out that experience with the criminal justice system is some indication that a defendant may be insensitive to delay—or, perhaps more accurately, less anxious about it than someone for whom criminal proceedings are a first-time experience. Finally,

although we ordered the charges in *Bethea* dismissed, rather than remanding for a trial court finding on prejudice apropos of *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), we did so based on a complete trial record. The government, therefore, had an opportunity to develop whatever case it could against a defense assertion of prejudicial anxiety; and this court, accordingly, reviewed a record where it could be said the parties joined issue, to the extent possible, on all relevant facts.

The present case differs from *Bethea* in all three respects. As discussed above, appellee's assertion of the right was substantially abandoned as the delay grew longer—a fact inconsistent with prejudicial anxiety. The record shows, moreover, as the trial court acknowledged, that appellee was not a newcomer to the criminal justice system. Finally, the trial court did not make a meaningful finding of anxiety.

More specifically, defense counsel asserted that because a police officer stationed near appellee's place of business (a gasoline station) had brought the assault charge, "anxiety is more than usual because he's got a feeling they have a vendetta against him." As a consequence, according to counsel, appellee "sold the business. He got out of [police district] 4D and went to another district to operate the same kind of station, Sunoco, and that's anxiety, Your Honor." Based solely on this proffer, the trial court found:

> may argue inferences from the record; it need not counter with independent evidence:
>
> > [T]he government's case cannot be expected to rise or fall on whether the government can point to independent evidence convincingly dispelling the contention that appellant was prejudiced from the delay. The government is entitled to argue both the objective facts of record and inferences to be drawn from a defendant's failure to assert particular prejudice. Then, the trial court—or, as here, the reviewing court—will evaluate the evidence and arguments proffered by both sides and decide whether the government has carried its burden of persuasion. [*Day, supra* at 971.]

---

3. In holding that "[a] delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial," *Branch v. United States*, D.C.App., 372 A.2d 998, 1000 (1977), we added that "[p]rejudice to the defendant need not be affirmatively shown after such lengthy delay." *Id.* (citations omitted); *see United States v. Bolden*, D.C.App., 381 A.2d 624, 628 (1977). Thus, delay of more than a year is presumptively prejudicial, and "the government accordingly has the burden of showing no prejudice once that presumption has attached." *Day, supra* at 970. The government's showing must "convincingly outweigh" the defendant's assertions. *Id.; Bethea, supra* at 793. In addressing this burden, however, the government

There has to be some anxiety on the part of a person, even such as this defendant, who has probably been involved with the police half a dozen times. There has to be some anxiety and, as counsel has said, and I accept his statement, that he has sold his business and has moved out of that area and it could very well have something to do with anxiety, also.

This cannot be characterized as a solid finding of prejudicial anxiety. Even if appellee sold his business and moved out of the area because of anxiety about this case—an assertion of counsel which the government had no realistic opportunity to explore—the court did not pin the fact down; it merely accepted an unprobed assertion and found, at most, that the move "could very well have something to do with anxiety." In any event, given appellee's virtual indifference to asserting the right to a speedy trial once the charges were brought the second time, I conclude that the majority overrates—and incorrectly accepts—the trial court's finding. The evidentiary support is not sufficient. *See* D.C.Code 1973, § 17–305(a).[4]

In summary, just as a first-time defendant's continual assertion of the right to a speedy trial manifests prejudicial anxiety when the delay extends substantially beyond one year, as in *Bethea,* I believe that a defendant's failure to assert the right—or clear abandonment of an earlier assertion—manifests a belief that delay is working in the defendant's favor, unless he or she makes a sufficient showing of prejudicial anxiety in some other, offsetting way. As I see it, counsel's proffer here, coupled with the trial court's speculative finding, is not sufficient for a finding of prejudice. Accordingly, on this record, absent a sufficient assertion of the right and a sustainable finding of prejudice, I cannot vote to affirm the trial court's ruling that dismissal of the indictment is warranted under *Barker, supra.*

## II.

The question, then, is what should happen next? Given the presumption, after a year of delay, that the defendant-appellee's speedy trial right has been violated—and, more to the point, the presumption that the delay has been prejudicial, *see* note 3 *supra* —a plausible argument can be made that the appellee should prevail, despite the trial court's insufficient findings, because (1) the government's showing of no prejudice must "convincingly outweigh" the defendant's contrary claim, *Day, supra* at 970; *Bethea, supra* at 793, and (2) the government, at the pretrial hearing, did not challenge counsel's proffer about the anxiety that caused appellee to sell his business.

I cannot accept those arguments, however, for under the circumstances of the trial court proceedings, the government had no effective way of challenging the proffer beyond arguing its insufficiency. Appellee proffered no witnesses whom the government could have cross-examined. As a practical matter, therefore, to ask the government to make a further showing would mean that a defendant could carry the day simply by using the presumption of prejudice, asserting anxiety, and proffering facts in support, which the government would have no way of contradicting. I readily accept the analysis in *Bethea* where we held, in effect, that an alleged first offender charged with a petty offense, who consistently asserted her right to a speedy trial, without success, manifested prejudicial anxiety as a matter of law. That is a matter of common sense. But when a defendant fails to assert the right, or abandons it, and presents no evidence as to why there nonetheless was prejudicial anxiety, I perceive no such anxiety. I would hold that under these circumstances the government can carry its burden of showing no prejudice as a matter of logical "inference" from the "objective facts" of record. *See Day,*

4. *Compare Reid v. United States,* D.C.App., 402 A.2d 835, 839 (1979) ("We find support in the record for the [posttrial] findings with respect to the reasons for the delay, the evidentiary weight to be given to appellant's assertion of the right and the lack of prejudice to appellant resulting from the delay") (footnote omitted).

*supra* at 971; note 3 *supra*.[5] The government will then prevail *unless* the defendant presents evidence in support of any proffer about anxiety which the government can make an effort to refute, through cross-examination or otherwise.[6]

Here, however, such a holding should not necessarily result in remanding the case for trial, even though defendant-appellee failed to put on proof supporting his claim that he sold his gas station because of anxiety over this case. Because prejudicial anxiety becomes a complex inquiry when combined with the burden of proof issue based on delay of more than a year, *see* note 3 *supra*, and because the parties did not have the benefit of this court's analysis of the point, I cannot say that defendant-appellee—any more than the government—should receive a definitive adverse ruling from this court at the present time. In fairness, I would remand the case to the trial court for an evidentiary hearing on prejudice, after which the court would have two options: dismiss the charge on speedy trial grounds after balancing all four *Barker* criteria (subject, once again, to the government's right of appeal); or deny the speedy trial motion and proceed to trial, without prejudice to reviewing the motion after trial in event of conviction. *See MacDonald, supra.*

As indicated in *Bethea*, a remand for reconsideration of prejudice, apropos of *MacDonald*, is usually related to claims of prejudice to defense preparation, rather than prejudice based on anxiety, and thus is more appropriately considered after trial, when defense preparation has been observed. Anxiety from trial delay, on the other hand, obviously has a pretrial focus. Accordingly, if the defendant asserts any prejudice to defense preparation (in addition to anxiety) from the delay, the trial court ordinarily should reserve the speedy trial motion for a post-trial ruling.[7] If, however, the asserted prejudice is limited to anxiety, I would permit (though not require) a pretrial ruling after remand, despite the possible lack of judicial economy in allowing a second pretrial government appeal in the event charges again were dismissed. There is no reason to force a trial if dismissal is clearly indicated.[8]

### III.

In summary, although the delay of more than a year—here 22 months—indicates prima facie merit to the speedy trial claim, *see Branch, supra* at 1000, I believe that the continuances attributable to defendant-appellee (six months), his ambivalent assertion of the right, and the failure of the parties to join issue on prejudice combine to require a remand for further proceedings.

---

5. This analysis does not necessarily mean that a claim of prejudicial anxiety may not prevail unless there is also a meaningful assertion of the right. For example, there may be cases in which evidence of a defendant's eventual personal trauma from delay can be said to outweigh failure to make an early or persistent assertion of the right, or be laid solely to the failure of counsel, not the client-defendant.

6. In the present case, for example, I see no impediment to the defendant-appellee's taking the stand, if he wishes, to explain the trauma which allegedly caused him to move his business. Because such testimony would relate solely to the period after arrest, appellee would not at the same time be subject to cross-examination about the charged offense unless he raised the subject. (Nor could his pretrial testimony be used as a basis for forcing him to take the stand at trial if he otherwise declined to testify.) Alternatively, appellee could present testimony of acquaintances in support of his assertion.

7. An exception might be, for example, a case of substantial pretrial delay during the course of which an obviously crucial defense witness died.

8. In the future, I would anticipate a sufficient pretrial hearing in the first instance when anxiety alone is the basis for a claim of prejudice.