UNITED STATES, Appellant,

v.

John E. CLARK, Appellee.

No. 11362.

District of Columbia Court of Appeals.

Argued March 17, 1977.

Decided July 15, 1977.

---

11. We have carefully reviewed appellant's remaining contentions and find them without merit.

William D. Pease, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Carl S. Rauh, Principal Asst. U. S. Atty., Henry F. Greene, Executive Asst. U. S. Atty., John A. Terry and Joseph B. Valder, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellant.

Alan B. Soschin, Washington, D. C., appointed by this court, for appellee.

Before KELLY, KERN and MACK, Associate Judges.

KERN, Associate Judge:

The government appeals from an order by the trial court dismissing with prejudice an indictment charging appellee with (1) second-degree murder while armed, (2) second-degree murder, and (3) carrying a pistol without a license, on the ground that appellee's constitutional right to a speedy trial had been violated. The government asserts in the instant case that appellee shot and killed a Mr. Ferguson in front of his sister's house on the night of November 14, 1974. Appellee, who has steadfastly denied that he was the perpetrator of the shooting, was arrested on the day following. On December 4, after a preliminary hearing, the case was bound over for consideration by the grand jury. Eight days later, the grand jury began hearing testimony and on January 9, 1975, issued a subpoena *duces tecum* for certain employee time cards which were in the possession of defense counsel.[1] This subpoena triggered extensive litigation in the trial court and this court which culminated in our issuing a writ of mandamus to the trial court and denying two separate petitions for rehearing en banc.[2]

After this court's final denial of the en banc petition in October 1975, the grand jury issued a new subpoena which was complied with and appellee was indicted one month later. Thus, we see that from December 1974, when the grand jury began taking testimony in this case, until November 1975, when the grand jury returned the indictment, the prosecution and defense counsel consumed some 10 months, most of it in this court, litigating the propriety of the grand jury's subpoena. Once the indictment was returned, the trial court in January 1976 held a status hearing and set the case for trial for April 1, 1976.

Nevertheless, in January 1976, appellee filed a motion to dismiss the indictment for lack of speedy trial. The motion was argued, taken under advisement and finally granted in August 1976. Thereafter, the government proceeded to bring this appeal.[3]

The Supreme Court has recognized that "[i]t is . . . impossible to determine *with precision* when the [speedy trial] right has been denied", *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972) (emphasis added), and therefore has mandated that a court confronted with such a claim employ a "sensitive balancing process." Further, the Court has enunciated certain factors which courts should consider in the balancing process: The length of

1. The apparent relevance of these time records is that they purport to show appellee was working at a gas station on the night in question, and thereby support his contention that he was not present at the time of the murder.

2. Specifically, appellee moved to quash the subpoena and the trial court granted his motion; the government sought from this court a Writ of Mandamus; after briefing and oral argument we issued an opinion concluding that such a Writ would lie and explaining why, but refraining from actually issuing the Writ; and, finally, after intervention by counsel representing the judge, this court issued the Writ and subsequently denied petitions for rehearing en banc filed by both the judge and appellee. *See United States v. Moultrie*, D.C.App., 340 A.2d 828 (1975).

3. The government appeals pursuant to D.C. Code 1973, § 23–104(a)(1).

delay; the reason for the delay; whether or not it may be fairly concluded that the defendant has waived his right; and, any prejudice incurred by the defendant. *Id.* at 530, 92 S.Ct. 2182. We proceed, then, to consider these elements under the particular facts of the case at bar.

The Court has specified the three major concerns in the area of prejudice are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo, supra* at 532, 92 S.Ct. at 2193 (footnote omitted). In this case, appellee has been at all times free on his own recognizance and thus can demonstrate no prejudice based on oppressive incarceration. It is claimed, however, that his preparation of an effective defense has been impeded by the passage of time, but the trial court's specific conclusions as to prejudice in the preparation of a defense here do not persuade us. It is important to note that since appellee was never incarcerated he was free during the litigation described above to consult with counsel and potential witnesses and marshal the evidence he needed for his defense. We note that the testimony taken by the grand jury of three alibi witnesses was routinely transcribed in its entirety so that any "fading memories" on their part can be revived and refreshed at trial by these prior transcripts. As to his contention that three other alibi witnesses are *now* not available, the record does not indicate what their testimony would or could have been. Where no *specific* claim of prejudice from the unavailability of these witnesses is made, and where other alibi witnesses are available, cognizable prejudice to the preparation of the defense has not been demonstrated.[4]

■ Thus, appellee is reduced to a claim of prejudice arising from the strain of being under indictment and subject to the possibility of a lengthy prison term. However, that allegation *by itself* "does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Morris v. Wyrick*, 516 F.2d 1387, 1391 (8th Cir.), *cert. denied*, 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975). *See also United States v. Baumgarten*, 517 F.2d 1020, 1025 (8th Cir.), *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975).

■ Turning next to the question of the timeliness of defendant's assertion, we reject the government's contention that appellee in any way "slept" on his right or otherwise delayed so as to be deemed to have waived his right. We are persuaded by appellee's contention that until the time of the resolution of the litigation concerning the grand jury's subpoena, *viz.*, October 1975, there was no certainty that a criminal case would actually materialize against him. Therefore, his delay in claiming his right to speedy trial until January 1976 is explicable by the litigation in *United States v. Moultrie, supra*, and cannot be said to constitute a waiver on his part of his right to a speedy trial.

Next we turn to the reason for the delay of the proceedings here which began with appellee's arrest in November 1974. To recapitulate, the crime and the arrest occurred in November 1974; the grand jury commenced its deliberations the next month and continued to January 1975 when the controversy about its subpoena erupted; it renewed its deliberations in this case within days after this court finally determined the validity of the subpoena appellee had challenged, and returned the indictment the

4. The trial court points out in its Memorandum Opinion that the grand jurors questioned the credibility of one Jesse Dew, another alibi witness, *because of his failure to come forward until after* the grand jury convened for the second time. The court, reasoning that petit jurors in a subsequent trial would react in a like manner, attributed this skepticism *on the part of the grand jurors directly* to the halt in the proceedings between January and November 1975 while the subpoena's validity was being litigated. We disagree. The record demonstrates only that appellee or his counsel did not locate Mr. Dew until sometime after the other alibi witnesses had testified before the grand jury and *not* that his appearance was delayed by the subpoena litigation.

next month, *viz.*, November 1975; and, the court in January 1976 held a status hearing and fixed a date for trial in April of this second-degree murder case. We think it fair to conclude that, putting aside the time required to litigate the propriety of the grand jury subpoena, the arrest and indictment of appellee and the scheduling of his trial have been effected with commendable speed.

■ Appellee contends, and the trial court appeared to agree, that the grand jury subpoena was the result of obduracy on the part of the prosecution in obtaining documents which merely reiterated information already made available to the grand jury in oral testimony from other witnesses. The trial court seemed to find the grand jury subpoena to be unjustified and hence the government to be proceeding in bad faith when it sought a Writ of Mandamus to overturn the court's quashing of the subpoena. However, as this court made clear in its opinion on the subsequent appeal, the Writ, which was ultimately issued, is an extraordinary remedy invoked only to correct "the court's fundamental misconception of its power to control the grand jury," *United States v. Moultrie, supra* at 832 (footnote omitted). In sum, we do not find this to be a case "where the Government was either purposefully or inadvertently neglectful". *United States v. Robinson,* 145 U.S.App.D.C. 46, 51, 447 F.2d 1215, 1220 (1971), in proceeding to invoke the appellate process.

■ While this court has held that a delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial, *Branch v. United States,* D.C. App., 372 A.2d 998 (1977); *United States v. Mack,* D.C.App., 298 A.2d 509, 511 (1972), we are satisfied that the government has sufficiently justified the delay in the instant case. Upon this record, the delay caused by the litigation of a pretrial motion and the extraordinary Writ of Mandamus was not inordinately lengthy and is "not to be accorded the heavy weight assigned to intentional delay", *United States v. Sarvis,* 173 U.S.App.D.C. 228, 235, 523 F.2d 1177, 1184 (1975). Moreover, appellee, who was never incarcerated, has not been so prejudiced in the preparation of his defense on the merits as to require invocation of the "draconian remedy" of dismissal with prejudice. *United States v. Jones,* 173 U.S.App. D.C. 280, 298, 524 F.2d 834, 852 (1975).

*Reversed and remanded with directions to reinstate the indictment.*