Whitfield GRAVES, Appellant,

v.

UNITED STATES, Appellee.

No. 82–94.

District of Columbia Court of Appeals.

Argued May 5, 1983.

Decided Sept. 23, 1983.

Rehearing En Banc Granted
and Opinion Vacated
Jan. 9, 1984.

Holly R. Skolnick, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., was on brief, for appellant.

Amy S. Berman, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher, and Steven D. Gordon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN and BELSON, Associate Judges, and KELLY, Associate Judge, Retired.

KELLY, Associate Judge, Retired:

Appellant appeals his conviction for first-degree murder/felony murder, D.C.Code § 22–2401 (1973) [recodified as D.C.Code § 22–2401 (1981)], first-degree burglary, D.C.Code § 22–1801(a) (1973) [recodified as D.C.Code § 22–1801(a) (1981)], and robbery, D.C.Code § 22–2901 (1973) [recodified as D.C.Code § 22–2901 (1981)], claiming that his Sixth Amendment right to a speedy trial was violated by the twenty-five month hiatus between his arrest and trial.[1] Balancing the four factors enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we conclude that, notwithstanding the gravity of the offenses with which he was charged, appellant's speedy trial right was denied and, accordingly, reverse and remand for dismissal of the indictment.

---

1. Appellant also asserts a violation of his Sixth Amendment right to confrontation by the admission of a codefendant's hearsay statement and claims plain error both in the court's failure to give a cautionary instruction regarding his oral admissions and in the prosecutor's improper rebuttal argument. We do not address these claims, concluding as we do that appellant's speedy trial right in fact was denied.

## I

Appellant was arrested on October 16, 1979.[2] Two days later, the District of Columbia Parole Board filed a detainer against him. A preliminary hearing was waived on October 22, 1979, and a twenty-five hundred dollar ($2,500) bond was imposed. Appellant's motion for review of bond, filed on December 3, was denied. On January 16, 1980, three months after arrest, an indictment was returned against appellant and two codefendants, Alvin Poston and Larry Brown; arraignment occurred on January 30. A status hearing, set initially for March 30, was continued upon successive government requests to April 7 and then to April 24, at which time trial was set for August 11.

On August 11, trial was continued to September 3, at the government's request,[3] and appellant's oral motion to dismiss for lack of prosecution was denied. On September 3, again upon the government's request, trial was continued further to December 1.[4] An oral motion by appellant to dismiss for lack of speedy trial was denied. Then, on September 9, the government filed a motion to change the December 1 trial date, based upon the anticipated unavailability of two government witnesses. Over appellant's opposition, the court rescheduled trial for December 11.

On November 13, 1980, appellant filed a motion to dismiss for lack of speedy trial which, by written order dated December 9, was denied. Despite noting that appellant had been incarcerated since his arrest on October 16, 1979, the court held that appellant's general allegation of prejudice, which it found to arise principally from the impairment of his defense and which was as-

serted for the first time in that motion, failed to demonstrate a violation of his Sixth Amendment right to a speedy trial.

Thereafter, on the scheduled trial date of December 11, the court granted appellant's motion to suppress his confession and continued trial to the following day. The next day, the government announced its intention to appeal the court's ruling and, on December 22, filed its notice of appeal. While certifying pursuant to D.C.Code § 23–104(a)(1) (1973) [recodified as D.C. Code § 23–104(a)(1) (1981)], that the appeal was "not taken for delay" and that the suppressed confession constituted "substantial proof of the charges pending" against appellant, the government did not move this court for expedited consideration. See D.C.Code § 23–104(e) (1973) [recodified as D.C.Code § 23–104(e) (1981)]; D.C.App.R. 4 III.

Meanwhile, on November 21, the parole board detainer against appellant was lifted. Appellant moved to modify bond on December 16 which the government opposed. On January 13, 1981, the motion was denied; appellant remained in jail. At an April 27 status hearing (to which the case had been continued following a status hearing on January 26), appellant orally moved to dismiss for lack of speedy trial and to reduce bond. Both motions were denied and the case again was continued to a status hearing on June 17, 1981.

Almost six months after filing its notice of appeal, on June 17, 1981, the government announced that it intended to dismiss the appeal, a motion to that effect having been filed with this court five days earlier. Our

---

**2.** For purposes of evaluating appellant's speedy trial claim, the pertinent time frame commences with arrest. *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975). The facts which underlay appellant's arrest are related fully in *Brown v. United States*, 464 A.2d 120 (D.C.App.1983), where we affirmed the conviction of codefendant Brown. Codefendant Poston's conviction was affirmed, No. 81–626, July 16, 1982 (Memorandum Opinion and Judgment). Upon the respective

motions to sever of appellant's codefendants, each had been tried separately.

**3.** Apparently, an essential government witness was unavailable.

**4.** This request for continuance was based on the injury and temporary unavailability for trial of the Assistant United States Attorney assigned to the case.

mandate from a June 19 order dismissing that appeal issued on July 2, 1981.

Appellant renewed his motion to dismiss for lack of speedy trial on August 14. After argument, the court took the matter under advisement and set trial for October 28. Following several continuances due to its unavailability, on November 5, 1981—approximately twenty-five months after his arrest, the court denied appellant's motion by written order and trial began. In ruling, the court incorporated the reasoning for the denial of appellant's earlier motion and commenced its analysis from that date. Characterizing the appellate delay which followed the grant of appellant's motion to suppress as reasonable and apparently not caused deliberately to obtain a tactical advantage, the court concluded that, although the claim was "a close one," appellant had failed to proffer evidence of actual prejudice, sufficient to warrant "the drastic sanction of dismissal."

In this appeal from the trial court's written order,[5] we review both as to the facts and the law and will reverse only for errors of law or if the court's finding is plainly wrong or without evidence to support it. See D.C.Code § 17–305(a) (1973) [recodified as D.C.Code § 17–305(a) (1981)]; Reid v. United States, 402 A.2d 835, 837 (D.C.1979). Applying anew the "sensitive balancing test" enunciated in Barker v. Wingo, supra, we conclude that the trial court did err in its interpretation of the law and, accordingly, we reverse.

## II

■ The trial court's evaluation of appellant's speedy trial claim entailed the "difficult and sensitive balancing" of four factors: (1) the length of delay, (2) the reasons for delay, (3) the assertion of the right by the defense, and (4) the prejudice resulting to the defendant. Barker v. Wingo, supra, 407 U.S. at 530, 92 S.Ct. at 2191; Bethea v. United States, 395 A.2d 787, 790 (D.C.1978).

We review each factor and the court's findings thereon in order.

### Length of Delay

■ The speedy trial clock starts running when formal criminal proceedings begin—either by arrest, indictment, or other official accusations, see United States v. MacDonald, 456 U.S. 1, 6, 102 S.Ct. 1497, 1500, 71 L.Ed.2d 696 (1982); Dillingham v. United States, supra; United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and continues ticking throughout the period of interlocutory appeals. Day v. United States, 390 A.2d 957 (D.C. 1978). In this jurisdiction, delay of a year or more between the start of formal criminal proceedings and trial establishes a prima facie violation of the accused's speedy trial right and raises a presumption of prejudice which shifts a heavy burden to the government to rebut. Parks v. United States, 451 A.2d 591, 602 (D.C.1982); Branch v. United States, 372 A.2d 998, 1000 (D.C.1977). "This burden increases in proportion to the length of the delay," although a longer delay may be tolerated for the prosecution of a serious and complex charge than for a simple misdemeanor. Warren v. United States, 436 A.2d 821, 834 (D.C.1981).

The trial court found that the total delay in bringing appellant from arrest to trial was approximately twenty-five months. Appellant's claim, therefore, acquired prima facie merit and produced a presumption of prejudice to which the government bore the heavy burden of convincingly outweighing. Day v. United States, supra, 390 A.2d at 970.

### Reasons for the Delay

■ In evaluating the reasons for the delay, we assign different weights to different reasons. Bethea v. United States, supra, 395 A.2d at 791; Barker v. Wingo, supra, 407 U.S. at 531, 92 S.Ct. at 2192.

---

**5.** Although this was the second trial judge to rule on a speedy trial motion by appellant, the case having been reassigned in April 1981, this latter ruling expressly incorporated the findings of the former.

Where delay is caused in bad faith by the government to acquire an advantage over the defense or to harass and vex the accused, a deprivation of the speedy trial right is more easily shown. *Bethea v. United States, supra,* 395 A.2d at 791; *Branch v. United States, supra,* 372 A.2d at 1000–01. "Such a deprivation inheres as well in delays caused by government indifference." *Bethea v. United States, supra,* 395 A.2d at 791 (citing *Hedgepeth v. United States,* 124 U.S.App.D.C. 291, 295, 364 F.2d 684, 688 (1966)). Institutional delay, a function of court congestion, weighs less heavily against the government, *Parks v. United States, supra,* 451 A.2d at 601, and such "neutral delay," although chargeable to the government, "may be easily outweighed by an inadequate assertion of the speedy trial right or a low threshold of prejudice." *Bethea v. United States, supra,* 395 A.2d at 791 (citing *United States v. Perkins,* 374 A.2d 882, 883–84 (D.C.1977)).

To evaluate the delay present in the instant case, we divide it into three periods: (1) October 16, 1979 to December 11, 1980—fourteen months—from the date of arrest to the grant of appellant's motion to suppress; (2) December 12, 1980 to July 2, 1981—approximately six and three-quarter months—from the date the government announced its intention to appeal to the date our mandate issued from our order granting the government's motion to dismiss its appeal; and (3) July 3, 1981 to November 5, 1981—a period of four months following the issuance of our mandate to trial.

In ruling on appellant's first written motion to dismiss for lack of speedy trial, the court found that, of the fourteen months constituting the first period, approximately five months were due to various continuances requested by the government and the remaining nine months were due to neutral, institutional delay. The court accordingly charged the entire fourteen month delay to the government, of which slightly less than two thirds was entitled to lesser weight. Neither of the parties challenges this finding which we affirm.

The second period of delay, caused primarily by the government's interlocutory appeal, equaled approximately six and three quarter months. In ruling on appellant's motion, the trial·court treated this delay as having three distinct stages. The first stage ran from December 12, 1980, when the government expressed its intention to appeal, to April 30, 1981, when the transcript of the suppression hearing was docketed in this court. The second stage extended from the April 30, 1981 docketing of the appeal to the government's decision to dismiss its appeal on June 12, 1981, and the third stage was from the dismissal of the appeal on June 12, 1981, to the issuance of our mandate on July 2, 1981.

The court viewed the first and third stages as part of the institutional delay inherent in the appellate process. Finding that the length of these stages appeared reasonable, that they would not have been affected significantly by an expedited procedure, and that they did not appear to have been deliberately caused in order to gain a tactical advantage, it classified them as neutral delays. With regard to the second stage, the court found that it resulted solely from the government's delay in deciding to dismiss the appeal. Viewing the tardiness of the government's decision as "not adequately explained," the court charged this delay to the government. On both counts, we find error.

We have held that, in the speedy trial context, "pretrial government appeal time, whether short or long, shall as a general rule be considered a significant, rather than neutral charge against the government, unless the prosecutor moves this court to expedite the appeal." *Day v. United States, supra,* 390 A.2d at 969.[6] Although this general rule has some excep-

---

**6.** We defined this "significant charge" as "an intermediate ... charge ... between neutral and intentional delay." *Id.* at 968.

tions, the apparent reasonableness of the appellate delay is not amongst them.[7] *Id.*

■ The trial proceedings in *Day* were held in abeyance for eighteen and one half months pending the disposition of the government's interlocutory appeal involving similar issues in another case. Appellant Day argued that this protracted appellate delay constituted an attempt to seize a tactical advantage over the defense and should be weighed heavily against the government. We stated that this eighteen and one half month period "was consistent with the time frame normally to be expected from the appellate process," *id.* at 968, and found no evidence of a deliberate attempt to gain advantage. Nonetheless, we concluded that the absence of a motion to expedite the interlocutory appeal, pursuant to D.C.Code § 23–104(e) (1973) and D.C.App.R. 4 III, required the government—prosecutor and appellate court—to share responsibility for the excessive pretrial appellate delay. *Id.* at 967–68.

As a practical matter, however, we found it unfeasible and inappropriate to determine which portion of this delay was neutral, *i.e.,* institutional, and which was excessive. Accordingly, we enunciated a bright-line rule that where the government fails to move to expedite a pretrial interlocutory appeal, the entire delay, reasonable or unreasonable, regardless of its length, constitutes a significant charge against the government.

In the case before us, the government filed its notice of appeal and failed to move this court to expedite consideration. Application of the *Day* rule could not be clearer. Despite the court's finding as to the apparent reasonableness of the first and third stages of delay, the entire period, from December 12, 1980, the date the government gave notice it would appeal, through July 2, 1981, the date we issued our mandate of dismissal, was chargeable to the government as a significant delay.[8]

■ The third period—four months—occurred between remand and trial. The court characterized it as neutral, institutional delay, resulting primarily from status hearings and the unavailability of trial dates. In failing to charge this period as substantial delay against the government, the court erred.

In *Day, supra,* following remand of the government's appeal, trial was delayed an additional six and one half months. We characterized the reason for the delay as normal "bureaucratic shufflings," yet concluded nonetheless that the majority of the delay "must be counted significantly against the government, which was no less responsible here than during the appeal." *Id.* at 969.[9] "[T]he fact that the indictment was already two years old add[ed] increased significance to each missed opportunity to expedite the case." *Id.*[10]

7. In *Day, id.* at 969 n. 5, we noted that certain exceptions to the general rule exist; for example, where the intentional delay by the government will result in a more serious charge or, conversely, where concurrent delay by the defendant in extending a briefing deadline offsets the significant charge to the government.

8. Although the court correctly charged to the government the second stage of delay, April 30, 1981—June 12, 1981, citing the government's failure to move to expedite the appeal, it erred in not ascribing to this charge "significant" weight.

9. We note that had the appellant in *Day* not requested a continuance during this time period, the entire period would have been charged to the government.

10. We since have stated in *Bethea v. United States, supra,* 395 A.2d at 791–92:

Because the speedy trial clause of the Sixth Amendment places the primary burden on the prosecution "to assure that cases are brought to trial," *Barker v. Wingo, supra,* 407 U.S. at 529 [92 S.Ct. at 2191], the passing of a considerable length of time, especially after an accused has asserted his speedy trial right, should motivate the government to seek a prompt trial. *Hedgepeth v. United States, supra,* 124 U.S.App.D.C. at 295, 364 F.2d at 688. If the government fails to take the necessary steps to effect an immediate trial, then the delay must be accorded substantial weight in the speedy trial calculations.

Before the government sought its appeal in the instant case, appellant had asserted his speedy trial right no less than three times. *See* discussion *infra*. Despite these assertions, and despite the fact that appellant remained incarcerated since his arrest fourteen months earlier, the government failed to move for expedited consideration of its appeal. Then, six months later, after moving to dismiss the appeal which it previously had certified was not taken for purposes of delay, the government again failed to attempt to expedite the trial proceedings. Notwithstanding the facile characterization of these four months as normal (and hence neutral) "bureaucratic shufflings," the government's manifest indifference to appellant's speedy trial right requires that we charge this additional four month period significantly against the government.

In sum, we conclude that the entire twenty-five month pretrial delay is attributable to the government. Of this delay, nine months resulted from institutional factors and are entitled to less weight. Of the remaining sixteen months, approximately eleven months we charge to the government as significant delay.[11]

*Assertion of the Right*

An early assertion of the right to a speedy trial is entitled to "strong evidentiary weight," *Barker v. Wingo, supra* [407 U.S.], at 531, 92 S.Ct. 2182 [at 2192], whereas a delay in asserting the right

makes it "difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193. We note that the timely assertion of the right is an extremely important factor for "the more serious the deprivation, the more likely a defendant is to complain." *Id.* at 531, 92 S.Ct. at 2192.

*Bethea v. United States, supra,* 395 A.2d at 792.

Appellant asserted his speedy trial right promptly and frequently.[12] On September 3, 1980, seven and one half months after indictment, he orally moved to dismiss for lack of speedy trial in response to the government's second request for continuance of the trial date.[13] Moreover, at the time of the government's first request for a trial continuance on August 11, 1980, appellant had orally moved to dismiss the indictment for lack of prosecution. Following the denial of these oral motions, appellant filed a written motion to dismiss for lack of speedy trial on November 13, 1980, and reasserted his right by oral motion at a status hearing on April 27, 1981.[14] Then, at a June 17, 1981 status hearing during which the government announced that it had moved to dismiss its appeal, appellant expressed his intention to reassert his right by written motion which was filed on August 14, 1981.

This record demonstrates that early on appellant pressed his right to a speedy tri-

11. We note that the charges against appellant were serious, yet straightforward; both the government and defense cases took only three days to present.

12. Even without express assertion, by appellant's continued incarceration, the government was placed on notice that appellant desired a speedy trial. *Strickland v. United States,* 389 A.2d 1325, 1331 (D.C.1978); *Branch v. United States, supra,* 372 A.2d at 1002. The government argues that the parole board detainer filed against appellant precludes implied notice. *See Jefferson v. United States,* 382 A.2d 1030, 1032 (D.C.1978). The detainer, however, was lifted on November 21, 1980. Hence, by that date, at the latest, even had appellant not otherwise asserted his right, the government

would have been on notice of his demand for a speedy trial. We note, moreover, that on December 3, 1979, while held under the detainer, appellant moved for a reduction in bond and, after the detainer was lifted, repeated the motion twice thereafter (December 16, 1980, April 27, 1981).

13. Six days later, on September 9, the government requested a further change of trial date which appellant opposed.

14. In addition, by letter to the court, dated April 14, 1981 and received May 21, 1981, appellant requested that the delay to which his trial had been subjected be investigated. In its ruling, the court treated this request as a *pro se* motion.

al.[15] While the delay preceding his assertion is entitled to little weight (not being in the context of a demand for speedy trial), *see Reed v. United States*, 383 A.2d 316, 319 (D.C.1978), "a more telling factor" in the overall balance is the delay which succeeded appellant's assertion. *See Bethea v. United States, supra,* 395 A.2d at 792. Subsequent to his oral motion to dismiss on September 3, 1980, appellant's trial was delayed an additional fourteen months. As we stated in *Bethea,* "While this fact is not conclusive, of itself, it is of great significance." *Id.; see also* note 10 *supra.* We find this significance enhanced in this case by the fact that, of this fourteen month delay, approximately eleven months constitutes a significant charge against the government for failing to expedite its interlocutory appeal. *See* discussion *supra.*

*Prejudice to the Defendant*

■ We assess the prejudice to an accused in light of the interests which the speedy trial right was designed to protect, namely: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2192. Although, of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system," *id.,* the Supreme Court has clarified that this latter interest "is protected primarily by the Due Process Clause and by statutes of limitations," not by the Sixth Amendment's speedy trial

clause. *United States v. MacDonald, supra,* 456 U.S. at 8, 102 S.Ct. at 1502. Here, as the Court has stated previously, "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *United States v. Marion, supra,* 404 U.S. at 320, 92 S.Ct. at 463.

The purpose of the speedy trial guarantee, therefore, is

> to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald, supra,* 456 U.S. at 8, 102 S.Ct. at 1502. Accordingly, while all three interests are relevant to the assessment of prejudice in the context of determining whether a defendant was denied a prompt resolution of the charges against him, under the speedy trial clause the former two interests—pretrial incarceration and anxiety—are accorded relatively greater weight. *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (per curiam) (finding "fundamental error" in a ruling by the Arizona Supreme Court that a showing of prejudice to the defense at trial was essential to establish a federal speedy trial claim).[16]

There is little doubt that appellant's principal contention of prejudice arises from his pretrial detention.[17] For the entire twenty-five month period between arrest and tri-

---

**15.** Although appellant failed to move in the alternative for an immediate trial, *see Bethea v. United States, supra,* 395 A.2d at 792 (citing *United States v. Bolden,* 383 A.2d 624, 628 (D.C.1977)); *see also Barker v. Wingo, supra,* 407 U.S. at 535, 92 S.Ct. at 2194, the promptness with which he asserted the right demonstrates the seriousness of his request. *See Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192 ("The more serious the deprivation, the more likely a defendant is to complain."). Nonetheless, we strenuously repeat that the credibility of an asserted deprivation of the speedy trial right will be enhanced by a simultaneous alternative request for an immediate trial.

**16.** Thus, the oft recited proposition that "an unimpaired defense is the 'most serious' interest protected by the speedy trial right" no longer holds true. *Parks v. United States, supra,* 451 A.2d at 603; *e.g., Warren v. United States, supra,* 436 A.2d at 836; *Towles v. United States,* 428 A.2d 836, 842 (D.C.1981).

**17.** Appellant concedes in his brief that he suffered no impairment to his defense resulting from his incarceration and, similarly, does not assert any examples of anxiety and concern caused thereby.

al,[18] appellant languished in the District of Columbia Jail. Referring to "the disadvantages for the accused who cannot obtain his release . . . ," the Court has stated:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time.

*Barker v. Wingo, supra,* 407 U.S. at 532–33, 92 S.Ct. at 2193 (footnote omitted). *See Branch v. United States, supra,* 372 A.2d at 1002.[19]

That the first fourteen months of appellant's incarceration were due to a parole detainer filed against him does not mean necessarily that, during this period, he suffered no prejudice.

[A]n accused who is already incarcerated can be prejudiced from the delay in trial

of newer charges because of the reduced possibility of concurrent sentences in event of conviction, the practice of increasing the punishment for an existing conviction when an additional, untried criminal charge has been lodged, the anxiety caused by still other charges to meet, and the increased difficulty in helping to prepare one's defense from a base in prison.

*Day v. United States, supra,* 390 A.2d at 972 (citing *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), and *United States v. Rucker,* 150 U.S.App.D.C. 314, 464 F.2d 823 (1972)).[20] We likewise have held that, notwithstanding incarceration on another charge, a defendant may be prejudiced by pretrial delay. *Strickland v. United States, supra,* 389 A.2d at 1331 (citing *Smith v. Hooey, supra; Coleman v. United States,* 142 U.S.App.D.C. 402, 442 F.2d 150 (1971).[21]

---

**18.** Since this period of pretrial detention exceeded one year, we presume prejudice. *Day v. United States, supra,* 390 A.2d at 970 (citing *Branch v. United States, supra,* 372 A.2d at 1000). *See Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2191. The Court has rejected emphatically "the notion that an affirmative demonstration of prejudice [is] necessary to prove a denial of the constitutional right to a speedy trial. . . ." *Moore v. Arizona, supra,* 414 U.S. at 26, 94 S.Ct. at 189.

**19.** The Court has noted further that confinement of pretrial detainees in local jails "contributes to the overcrowding and generally deplorable state of those institutions." *Barker v. Wingo, supra,* 407 U.S. at 520, 92 S.Ct. at 2187. This statement is inadequate to describe the conditions of confinement which prevailed at the District of Columbia Jail during the 1970's. *See Campbell v. McGruder,* 416 F.Supp. 100 (D.D.C.1975) (class action brought in 1971 by pretrial detainees incarcerated at the District of Columbia Jail under allegedly unconstitutional confinement conditions) ("By far the most flagrant and shocking encroachment on the constitutional rights of the plaintiff class is the overcrowding . . . ."), *aff'd and remanded,* 188 U.S.App.D.C. 358, 580 F.2d 521 (1978) ("The life of pretrial detainees at the District of Columbia Jail has been marked by deprivation, neglect and degradation."). Today, notwithstanding the construction of a new facility and the passage of twelve years since the filing of

the afore cited suit, conditions at the District of Columbia Jail have improved little. *See Campbell v. McGruder,* No. 1462–71 (D.D.C. June 27, 1983) (Memorandum Order); *see generally Judge Orders Hearing on Crowded D.C. Jail,* Washington Post, June 28, 1983, at B1, col. 3.

**20.** With regard to the prejudice suffered by a federal prisoner from the deprivation of a speedy trial on state criminal charges, in *Smith v. Hooey, supra,* 393 U.S. at 378, 89 S.Ct. at 577, the Court commented:

> At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge.

**21.** Conceding that "the fact that appellant's incarceration stemmed from other charges does not necessarily mean that he suffered no prejudice, *Day v. United States, supra,* 390 A.2d at 972," the government nevertheless argues that the parole board detainer filed against appellant "breaks the chain of causation between pretrial delay and any presumed prejudice. *Jefferson v. United States,* 382 A.2d 1030, 1032 (D.C.1978)." We disagree.

In *Jefferson,* the appellant was arrested and brought to trial within slightly more than a

During the initial fourteen months of his pretrial confinement, appellant twice expressly asserted his speedy trial right (September 3, 1980 (oral), November 13, 1980 (written)), demonstrating his desire for a prompt adjudication of the charges against him.[22] Nevertheless, during this entire period, the government failed to heed his demands. In spite of the government's "primary burden to assure that cases are brought to trial," *Barker v. Wingo, supra,* 407 U.S. at 529, 92 S.Ct. at 2191, appellant remained in detention for almost twelve additional months after the parole detainer was lifted. We attribute great significance to the fact that this additional incarceration was in the context of appellant's previous, as well as continued,[23] demands for a speedy trial. *See Bethea v. United States, supra,* 395 A.2d at 792 (delay following manifestation of desire for prompt trial is of great significance); *cf. Reed v. United States, supra,* 383 A.2d at 319 (until an accused asserts the right, "the earlier delay

cannot be viewed as occurring in the face of a speedy trial demand and is accorded less[er] significance . . . .").

*Conclusion*

 Engaging in the "sensitive balancing process" required by *Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. at 2193, we are mindful of the gravity (as well as the relative straightforwardness) of the crimes with which appellant was charged.[24] Weighing the four factors enunciated in *Barker, id.* at 530, 92 S.Ct. at 2191—the twenty-five month delay, in its entirety attributable to the government; the governmental indifference to appellant's clearly asserted speedy trial right in failing to move for expedited consideration of its appeal, resulting in a significant charge against it of eleven months; appellant's prompt pressing of his right (and the subsequent, consequently lengthy, delay until trial); and the prejudice suffered by appellant from his detention in the District of Columbia Jail for the entire pretrial period—we

year. Although his arrest resulted in a revocation of parole on a prior conviction and caused him to remain incarcerated for the entire pretrial period, he first asserted his right on the day of trial. Finding that this extended silence rendered suspect any claim of prejudice arising from either incarceration or anxiety attendant to unresolved criminal charges, we emphasized the warning of the Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, that "[a] failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial," and stated that appellant's imprisonment due to revocation of parole effectively rebutted any presumption of prejudice by breaking "the nexus between the delay and the prejudice." *Jefferson v. United States, supra,* 382 A.2d at 1032 (citing *Smith v. United States,* 379 A.2d 1166, 1167 (D.C.1977) (presumption of prejudice arising from delay of one year is rebuttable)).

Our holding in *Jefferson,* however, is inapposite to the instant case. Appellant here did not sit on his rights and remain silent until the day of trial. To the contrary, the record evidences frequent and strident assertions of his right to a speedy trial—as early as seven and one half months after indictment. In the context of his speedy trial claim, presuming prejudice from his lengthy pretrial incarceration will not garner appellant any greater benefit, or place him in any greater stead, than he deserves for his prompt attention to the assertion of his right.

Moreover, to ascribe to our holding in *Jefferson* the meaning which the government asserts would read into the Sixth Amendment guarantee a distinction which does not exist. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." This unequivocal language unconditionally guarantees to every accused the "fundamental right" to a speedy trial, *see Klopfer v. North Carolina,* 386 U.S. 213, 225–26, 87 S.Ct. 988, 994–95, 18 L.Ed.2d 1 (1967), regardless of either past criminal history, *see Smith v. Hooey, supra,* or even assertion of the right by the accused. *See Barker v. Wingo, supra,* 407 U.S. at 528–29, 92 S.Ct. at 2191.

22. Appellant additionally moved once for a reduction of bail (December 3, 1979), once for dismissal of the indictment for want of prosecution (August 11, 1980), and opposed a government motion to change trial date (September 22, 1980).

23. Following removal of the detainer, appellant twice moved for a reduction of bond (December 16, 1980, April 23, 1981), in addition to twice moving for dismissal of the indictment for lack of speedy trial (April 27, 1981 (oral), August 14, 1981 written)).

24. Appellant's convictions, however, on those charges should not, and most certainly do not, enter into our speedy trial calculus.

conclude that, in this case, appellant's right to a speedy trial was intolerably denied.

Accordingly, we reverse appellant's convictions and remand for dismissal of the indictment. *Branch v. United States, supra,* 372 A.2d at 1002; *see Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

*So ordered.*

FERREN, Associate Judge, concurring:

I join in Judge KELLY's opinion for the court. I write separately, however, to emphasize my understanding that the Supreme Court last term clarified that the most significant "prejudice" factors in speedy trial analysis are deprivation of liberty and other disruptions of life, not impairment of defense preparation. *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Consequently, prejudice from appellant's lengthy pretrial incarceration, coupled with his prompt and frequent assertion of the right to a speedy trial, distinguishes this case from *Day v. United States,* 390 A.2d 957 (D.C.1978)—relied on by the dissent—and accordingly mandates reversal.

## I.

In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court specified four factors—length of the delay, reasons for the delay, assertion of the right, and prejudice to the defendant—for use in speedy trial analysis. *Id.* at 530, 92 S.Ct. at 2191. The Court announced "a difficult and sensitive balancing process" in which "none of the four factors" was "either a necessary or sufficient condition to the finding of a deprivation of the right of a speedy trial." *Id.* at 533, 92 S.Ct. at 2193.

In connection with the present appeal, it is important to note that prejudice to defense preparation from pretrial delay is not the principal kind of prejudice relevant to Sixth Amendment analysis. In *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Court said that "the major evils protected against by the

speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.... Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Id.* at 320, 92 S.Ct. at 463; *see Moore v. Arizona,* 414 U.S. 25, 26–27, 94 S.Ct. 188, 189–190, 38 L.Ed.2d 183 (1973) (per curiam).

A year later in *Barker, supra,* the Court included a Sixth Amendment concern for prejudice to defense preparation. It summarized three forms of prejudice from pretrial delay: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." *Id.* at 532, 92 S.Ct. at 2192. The Court added: "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* As Judge KELLY points out, this court in several cases focused on this latter emphasis, testing prejudice for speedy trial purposes significantly, if not primarily, by reference to impairment of defense preparation. *See, e.g., Parks v. United States,* 451 A.2d 591, 603, 604 (D.C.1982); *Warren v. United States,* 436 A.2d 821, 836 (D.C. 1981); *Towles v. United States,* 428 A.2d 836, 842 (D.C.1981).

However, in *United States v. MacDonald, supra,* the Supreme Court receded from *Barker's* Sixth Amendment emphasis on impairment of defense preparation. After stressing the language quoted above from *Marion, supra,* 404 U.S. at 320, 92 S.Ct. at 463, the Court stated in *MacDonald:*

The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to

minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. 456 U.S. at 8, 102 S.Ct. at 1502. Thus, impairment of liberty and other anxiety-producing disruptions of life are the principal interests protected by the Sixth Amendment; prejudice to defense preparation from pretrial delay, while relevant, is primarily a matter of protection by the Fifth Amendment right to due process.[1]

Appellant has conceded he suffered no prejudice to defense preparation from pretrial delay in this case. In the past, under this court's interpretation of *Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2192, this concession (or a trial court finding) that the "most serious," *id.,* form of prejudice was lacking, would have diluted the prejudice factor in the overall analysis, despite lengthy pretrial incarceration, to the point of requiring affirmance of a close case. *See Parks, supra,* 451 A.2d at 602–04. After *MacDonald, supra,* the "difficult and sensitive balancing process," *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193, is altered as to the prejudice factor. Consequently, given a two-year pretrial delay, appellant's pretrial incarceration takes on added significance in comparison with previous analyses, especially when coupled with his persistent assertion of the right to a speedy trial.

## II.

Our dissenting colleague votes for affirmance by relying primarily on *Day v. United States,* 390 A.2d 957 (D.C.1978). That case is readily distinguishable from this appeal on two grounds. First, as the dissent concedes, with respect to assertion of the right

to a speedy trial appellant's "position on appeal is better than Day's." *Post* at 726. Appellant "asserted his speedy trial right promptly and frequently," *ante* at 718 (footnote omitted), beginning 7½ months after indictment, whereas Day concentrated his interest in a speedy trial "on the six-month period after remand by this court following an interlocutory appeal beginning 2½ years after arrest." *Day, supra,* 390 A.2d at 969.

Second, in the present case, appellant was incarcerated for "the entire twenty-five month period between arrest and trial," *ante* at 719 (footnote omitted), eleven months of which were on the present charges alone. In contrast, Day "was imprisoned for other crimes during most of the [32-month] period between arrest and trial," *Day, supra,* 390 A.2d at 971, and did "not make a point of prejudice from incarceration." *Id.* at 972. Our dissenting colleague concedes that "the weight to be given Day's incarceration is lessened somewhat by the fact that during most of it he was serving time on other convictions." *Post* at 727.

Especially because of appellant's prompt and frequent assertion of the right to a speedy trial (in contrast with Day's 2½ year wait), appellant's incarceration—including the period when a parole detainer was lodged against him, *see Day, supra,* 390 A.2d at 972—was manifestly more prejudicial than Day's incarceration was to him and accordingly should have alerted the prosecutor and the court to a need for faster action. Our dissenting colleague, therefore, is incorrect in concluding "it cannot be said that the prejudice factor is measurably greater in this case than in *Day." Post* at 727.

In *Day,* this court stated:

---

1. *Cf. United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* —— U.S. ——, 103 S.Ct. 2005, 2012, 2014, 76 L.Ed.2d 143 (1983) (*Barker v. Wingo* Sixth Amendment analysis provides relevant framework for determining whether government's delay in filing civil proceeding for

forfeiture, after customs officer seized claimant's currency, violated Fifth Amendment right to be heard at meaningful time; due process inquiry into prejudice factor focuses primarily on whether delay hampered claimant in presenting a defense on the merits).

If any concrete prejudice to defense preparation (or any other type of prejudice) had been brought to light, or if appellant had pressed hard for expedited resolution of the government's pretrial appeal ..., this two-year delay, amounting to a significant charge against the government, might well have been enough to require dismissal on Sixth Amendment grounds.

*Id.* at 973. Those words anticipated the present case. Reversal is required.

BELSON, Associate Judge, dissenting:

Whitfield Graves was convicted by a jury of the first-degree felony murder of James R. Matthews. The majority holds that his conviction must be reversed because it concludes that Graves' right to a speedy trial was violated. I think that the majority result is plainly inconsistent with an earlier holding of this court in another murder case. Therefore, I dissent.

I set forth the facts briefly. Appellant Whitfield Graves and two accomplices, Brown and Poston, forced their way into the apartment of James A. Matthews. Described as the neighborhood bootlegger, Matthews was usually cautious about letting people into his apartment. But accomplice Poston was a known customer and when Matthews opened the door for Poston, all three murderers rushed in. They killed Matthews. The next morning, his mother found his body on a couch. He had been strangled to death. He was gagged, and his wrists were bound with electrical cord. Before they left his apartment, Brown, Poston and appellant Graves stole Matthews' money and liquor.

All three murderers were arrested in October of 1979. Poston was tried in February of 1981. His conviction of first-degree

felony murder and other offenses was affirmed by this court on July 16, 1983.[1]

Brown was tried in May of 1981. His conviction of first-degree felony murder and other offenses was affirmed by this court on July 18, 1983.[2]

The majority holds today that the conviction of the third of the three murderers of James R. Matthews must be reversed.

My disagreement with the majority is based upon my conclusion that under controlling precedent, Graves' murder conviction should be affirmed. In *Day v. United States,* 390 A.2d 957 (D.C.1978), a case remarkably similar to this case, this court affirmed a murder conviction where the defendant had been incarcerated for 31½ months before trial. I have found no other decision of this court as close on point with this case as *Day.* A comparison of the two cases demonstrates that the majority opinion is inconsistent with *Day,* and therefore is erroneous since a division of this court cannot depart from a previous ruling by another division. Only the en banc court can do so. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971); District of Columbia Court of Appeals Internal Operating Procedure VIII H (1983 ed.).

In *Day,* as in the majority opinion here, a determination of the appellant's speedy trial claim was reached by a balancing of the four controlling factors identified by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The first of those factors is the total length of time from the commencement of formal criminal proceedings until trial. In *Day* the period was 31½ months; here it was 25 months. In this respect, a comparison with *Day* strongly supports affirmance here.[3]

1. *Poston v. United States,* No. 81–626, Memorandum Opinion and Judgment (D.C. July 16, 1983).

2. *Brown v. United States,* 464 A.2d 120 (D.C. 1983).

3. *Day* is not the only case where delays approximately as long as the delay here were

found, upon balancing of all relevant factors, not to have deprived an accused of his right to a speedy trial. *Warren v. United States,* 436 A.2d 821, 833 (D.C.1981) (22 months); *Gaffney v. United States,* 421 A.2d 924, 926 (D.C.1980), cert. denied, 451 U.S. 941, 101 S.Ct. 2026, 68 L.Ed.2d 330 (1981) (33 months); *Williams v. United States,* 421 A.2d 19, 26–27 (D.C.1980)

The second factor identified in *Barker v. Wingo, supra,* is the reason for delay. Where the reason is not such that the government is fully excused from responsibility for the delay, the delay is usually categorized (1) as serious, weighing heavily against the government, (2) as significant (an intermediate category), or (3) as neutral. *See Day v. United States, supra,* 390 A.2d at 968; *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192.

In *Day,* as here, the period of delay was divisible into three main periods; the first commencing with arrest and extending to an interlocutory government appeal; the second, the duration of that appeal, and the third, the period between the resolution of the appeal and trial on the merits.

In *Day* the first period amounted to 7 months. It covered the routine procedures such as presentment, mental examination, preliminary hearing, indictment, arraignment and discovery matters. This court held that such time was not "chargeable specially against the government." Apparently it was deemed at worst neutral delay. *Id.,* 390 A.2d at 966.

Here, the first period culminating in the government's interlocutory appeal amounted to 14 months. The trial court ruled, and the parties do not dispute, that of that period 9 months constituted neutral institutional delay, and 5 months constituted government delay in the form of continuances it requested. The latter period was apparently viewed by the majority as more the responsibility of the government than mere institutional delay (at 716), but was not counted as significant delay to be charged to the government (at 718; 721).

Turning to the interlocutory appeal period, *Day* held for reasons set forth in a lengthy discussion that the entire appeal period of 18½ months there was significant government delay. The court reasoned essentially that since the government failed to move for expedition of the appeal, it was chargeable with the entire undivided time of appeal as significant delay (rather than chargeable for merely the difference between expedited and non-expedited appeal).[4] Accepting that reasoning at face value and applying it here, we see that 18½ months in *Day* but only 6½ months here are chargeable to the government as significant delay due to interlocutory government appeal.

Finally, we turn to the period following interlocutory appeal. In *Day,* it was held that all but one of the 6 months of post-appeal delay constituted significant government delay. Here the majority holds, and I do not disagree, that the entire post-appeal period of 4 months is chargeable to the government as significant delay.

Adding up the foregoing, we find that in *Day* this court held that 23½ months constituted significant delay attributable to the government. Another 7½ months were institutional delay (chargeable to the government, but neutral), and 1 month was chargeable to the defense.

Here, by the majority's calculation, only 11 months were chargeable to the government as significant delay (at 721), less than half the amount so chargeable in *Day.* For convenience, the foregoing comparisons are

---

(21 months); *Reid v. United States,* 402 A.2d 835, 837 (D.C.1979) (21 months); *Strickland v. United States,* 389 A.2d 1325, 1329 (D.C.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 481 (1979) (20 months), and *Cates v. United States,* 379 A.2d 968, 970 (D.C.1977) (59 months). I do not suggest that the circumstances in all of the foregoing cases are comparable to those before us here.

**4.** As a division of this court, we are bound by the earlier decision of the division in *Day* to charge the entire period of the interlocutory appeal to the government as significant delay. Were the matter open, I would take the view that, at most, the government should be charged with the difference between normal appeal and expedited appeal. Going further, I question the importance the *Day* court attached to a government motion for expedition. This court itself is commanded by statute to expedite such interlocutory criminal appeals whether or not the government or defense seeks expedition. D.C.Code § 23–104(e) (1981).

summarized in a chart set forth in the footnote.[5] Yet the majority would reverse the murder conviction here. I submit that justification for the different result cannot be found in the last two of the four *Barker v. Wingo* factors.

The third factor is the defendant's assertion of the right to speedy trial. In *Day,* the division opinion recounted, without going into detail, that the trial judge confirmed in ruling on Day's speedy trial motion that Day "at various stages of this proceeding, asserted his rights to a speedy trial...." *Day, supra,* 390 A.2d at 969. This court went on to note, however, that Day had not made any effort to cause expedition of the interlocutory appeal, and stated:

> Even if entitled by statute to an expedited government appeal, a defendant should make that interest known. If we do not hold him responsible for doing so, we will in effect be encouraging him to hold back during the appeal period, take his chances on eventual acquittal in the hope that the government's case will become stale during the hiatus, and then have a second opportunity for dismissal—for lack of a speedy trial. We do not believe that such a tactic should be automatically rewarded.

*Id.,* 390 A.2d at 970. The same must be said of Graves, whose counsel made no effort to secure expedition of the government's interlocutory appeal, even though his counsel had the benefit of this court's admonition in *Day.*

However, Day also failed to file a speedy trial motion as such until well after the interlocutory appeal was concluded, approximately one and one-half months before trial. Graves, on the other hand, moved orally to dismiss for lack of a speedy trial in September of 1980. Moreover, he had filed a motion to dismiss for lack of prosecution 1 month earlier when the trial was continued for the first time. It must be conceded that in this lone particular, Graves' position on appeal is better than Day's. At the same time, I note that Graves' motion was not made until almost 11 months after his arrest.

Turning to the fourth *Barker v. Wingo* factor, prejudice to the defendant, there is once more a strong parallel between *Day* and the instant case. Prejudice, as defined in *Barker v. Wingo,* has three aspects: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) impairment of the defense. *Id.,* 407 U.S. at 532, 92 S.Ct. at 2192.

As to the first aspect, incarceration, Graves and Day were prejudiced to a roughly comparable extent. Graves was incarcerated for 25 months, the entire period between his arrest and trial. During 14 of the 25 months' incarceration, Graves was held also pursuant to a parole detainer triggered by his arrest in the instant case.

Day was incarcerated for 22 of the 31½ months between his arrest and trial.[6] Apparently, during most or all of the 22 months he was also being held on unrelated criminal convictions. *Day, supra,* 390 A.2d at 971. As we noted in *Day,* "[t]he fact that this incarceration was due to unrelated criminal convictions ... does not eliminate the possibility of prejudice from pretrial delay." *Id.*

As to the second aspect of prejudice, neither Graves nor Day made any particular allegations of anxiety and concern. All defendants suffer some anxiety awaiting trial, *see Strickland, supra* note 3, 389 A.2d at 1331, but this, in itself, does not require overturning of a conviction. *See United States v. Clark,* 376 A.2d 434, 436 (D.C. 1977).

**5.** This table illustrates the comparison between periods of delay in *Day* and those in the instant case, stated in months.

| | *Day* | | *Graves* |
|---|---|---|---|
| 7 | Institutional delay before government appeal (neutral) | 9 | Institutional delay before government appeal (neutral) |
| — | | 5 | Government delay before appeal (neutral) |
| 18½ | Government appeal delay (significant) | 6⅔ | Government appeal delay (significant) |

| | *Day* | | *Graves* |
|---|---|---|---|
| 5 | Post-appeal delay (significant) | 4 | Post-appeal delay (significant) |
| 1 | Post-appeal delay defense | — | |
| 31½ | Total delay | 24⅔ | Total delay |
| 23½ | Significant government delay | 10⅔ | Significant government delay |

**6.** Day was incarcerated from November 8, 1973, to May 7, 1974, and from February 20, 1975 to June 24, 1976. From May 7, 1974 to February 20, 1975, Day was in third-party custody to Bonabond.

The final aspect of prejudice, impairment of the defense, was declared the "most serious" in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2192.[7] Graves concedes that his defense was not impaired by the delay in his trial. Day, on the other hand, contended that delay hampered his counsel's ability to cross-examine government witnesses and diminished the effectiveness of the testimony of his only witness. The court found Day's argument unpersuasive.

As to the final factor of prejudice, then, we see that Graves was incarcerated approximately as long as Day, although the weight to be given Day's incarceration is lessened somewhat by the fact that during most of it he was serving time on other convictions. Neither Graves nor Day made any particularized showing of anxiety, nor did either demonstrate that his trial defense was impaired by the delay (although Day claimed unsuccessfully that his defense was impaired). Balancing all the circumstances, I think it cannot be said that the prejudice factor is measurably greater in this case than in *Day.*

Summing up as to all four factors identified in *Barker v. Wingo,* it is seen that the case for affirmance is far stronger here than in *Day* in the two crucial factors of length of delay and reason for delay. As to assertion of the right, Day's case was stronger than is Graves'. In prejudice, the comparison is close.

Significantly, the majority here does not find that there was any deliberate effort by the government to use delay to secure a tactical advantage, and I agree that the appellant's arguments in that regard are totally unpersuasive.

Given, then, the substantially longer period of both overall delay and significant delay chargeable to the government which this court considered in affirming Day's murder conviction, it seems to me that there can be no reasonable conclusion other than that this court is bound by precedent to affirm here.

Finally, I observe that the situation is far from ideal when 25 months elapse before an incarcerated defendant is brought to trial. Speedy trials are mandated, and those who play roles in the criminal justice system must strive to afford them. The question before the court is whether the pace of the proceedings here was so lacking in speed as to warrant reversal. I think it was not.

I respectfully dissent.

PER CURIAM.

### ORDER

On consideration of appellee's petition for rehearing en banc and of appellant's opposition thereto, and it appearing that the majority of the judges of this court has voted to grant the aforesaid petition, it is

ORDERED that appellee's petition for rehearing en banc be granted; that this court's opinions and judgment entered on September 23, 1983, are hereby vacated; and that the Clerk is directed to cause this case to be scheduled for argument before the court sitting en banc as soon hereafter as the business of the court permits. The parties are hereby directed to transmit ten additional copies of the briefs heretofore filed in this case within 10 days from the date of this order.

---

**7.** The Supreme Court last year held that the primary purpose of the speedy trial guarantee is to minimize the possibility of lengthy incarceration prior to trial. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Prejudice from incarceration has long been a significant factor in speedy trial analysis, however, *see United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), and I do not agree with my concurring colleague that *MacDonald* should be read as altering the analysis as substantially as he suggests. *Ante* at 722 – 723.